**FEDERAL KEMPER INSURANCE COMPANY, Appellee,**

v.

**RAUSCHER, Richard H. and Griffith, Robert and Griffith, Linda.**

**Appeal of Robert and Linda GRIFFITH.**

**No. 86–1274.**

United States Court of Appeals, Third Circuit.

Argued Oct. 28, 1986.

Decided Dec. 11, 1986.

Rehearing and Rehearing In Banc Denied Decided Jan. 14, 1987.

James M. Marsh (argued), Thomas P. Grace, LaBrum & Doak, Philadelphia, Pa., for appellee.

David F. Binder (argued), Raynes, McCarty, Binder, Ross & Mundy, Philadelphia, Pa., for appellants.

Before ADAMS,* HIGGINBOTHAM and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge:

This appeal addresses the issue of the standing of an injured party when a declaratory judgment action is brought by an insurance company against its insured (Rauscher) and the injured party (the Griffiths). The Griffiths appeal from the district court order denying their motion to reconsider a summary judgment entered against them. The district court, in entering summary judgment for Kemper, held that, within the procedural posture of the declaratory judgment action brought by Federal Kemper Insurance Company (Kemper), the rights of the Griffiths as injured parties were derivative of the insured's rights and that the Griffiths had no standing after default judgment was entered against Rauscher, the insured. We reverse.

### I.

This case arose out of a tragic automobile accident involving both the appellants, Linda and Robert Griffith, and the insured, Richard Rauscher. The accident occurred on February 21, 1981, while Rauscher was

* Judge Adams participated in the oral argument but not in the decision of this case.

driving a Volkswagen Rabbit owned by his girlfriend's mother. The Griffiths were passengers in the car, and both incurred injuries. Ms. Griffith, who suffered substantial brain damage as a result of a traumatic brain stem lesion, is now permanently disabled.

The automobile involved in the accident was insured by the Government Employees Insurance Company (GEICO) for a maximum of $50,000. Rauscher was insured by the appellee, Federal Kemper Insurance Company, under a commercial liability policy with a limit of $100,000. Rauscher's policy only covered Rauscher's commercial vehicle, a pick-up truck, or any "temporary substitute auto." The policy defined "temporary substitute auto" as "any auto you do not own while used as a temporary substitute for a covered auto which is out of normal use because of its breakdown, repair, servicing, loss or destruction." App. at 12. The automobile involved in the accident did not fall within the policy's definition of "temporary substitute auto," because at the time of the accident Rauscher's pick-up truck was not "out of normal use." Apparently unaware of the policy's lack of coverage, Rauscher reported the accident to Kemper.

The Griffiths sued Rauscher for damages in February 1983 in the Philadelphia Court of Common Pleas. Kemper refused, on the ground of noncoverage, Rauscher's request for a defense. This case is still pending.

Kemper desired a determination of the extent of its obligation to Rauscher and brought this declaratory judgment action against Rauscher and the Griffiths. Kemper sought a declaration that the automobile Rauscher was operating at the time of the accident was not a "covered" auto within the meaning of the policy and that therefore the 1981 accident was not within the coverage of the policy.

Not surprisingly, presentation of the relevant facts underlying the coverage dispute has been impeded by the default judgment against Rauscher and the simultaneous judgment against the Griffiths. Certain facts, however, can be gleaned from the affidavits presented on motion for reconsideration.

Apparently, Rauscher's previous policy, which had been written by Prudential Insurance Company,[1] covered Rauscher when he drove vehicles other than his pick-up truck. Coverage for such accidents would be excess over any policy held on the other vehicle. Before his purchase of the Prudential policy, Rauscher was covered by a similar policy from Erie Insurance Company, which also covered him whenever he drove someone else's car.

Rauscher's policy with Prudential was cancelled on December 28, 1980, because he failed to pay the November 1980 premium. In January of 1981, Rauscher spoke with his insurance broker, Donald Trone, who had sold him his previous policy with Prudential Insurance Company. Trone, a licensed agent for Kemper, discussed two policies with Rauscher. One of the policies, which had yearly premium payments of over $600, was with Prudential. The second, with Kemper, had yearly premiums totalling only $252. Trone explained to Rauscher that the difference in price was due to the fact that Rauscher, a carpenter, was eligible for a commercial policy on his pick-up truck.

Trone testified in his deposition that he told Rauscher that there was no difference between the coverage provided by the Prudential policy he previously held and that provided by the Federal Kemper policy. Rauscher chose the Federal Kemper policy and paid the first premium at Trone's office on January 27, 1981.

Rauscher testified on deposition that he believed that he was covered to the same extent by the Federal Kemper policy as he was by his previous policies. He stated that: "Because every other insurance policy I have ever had I was covered driving someone else's vehicle. And I assumed it would be the same with Kemper." App. at 150. In addition, Mr. Rauscher testified

---

1. This insurance policy is not included within the record.

that when he made his first premium payment on January 27, 1981, he was told that a copy of the insurance policy would soon be sent to him. He also testified that he was unsure whether he had received a copy of the insurance policy by the time of the accident, three and one half weeks after the payment of his first premium.

Kemper filed its complaint for a declaratory judgment on July 2, 1985. It sought to have the district court construe the terms of the policy and declare that the automobile operated by Rauscher at the time of the accident was not a "covered auto" within the meaning of the policy, and that therefore the insurance company was not obligated to provide a defense or indemnity for Rauscher in the pending state action.

The Griffiths answered on November 12, 1985, asserting, among other things, that Kemper's policy should be construed to provide coverage for the accident. Rauscher failed to answer and on November 29, 1985, Kemper thereupon moved for default judgment against Rauscher. The district court, holding that the Griffiths' rights were purely derivative of Rauscher's rights, entered judgment against the Griffiths, after default judgment had been entered against Rauscher.

The Griffiths filed a motion for reconsideration arguing that equitable grounds existed for the reformation of the Kemper policy to provide coverage for the February 1981 accident. The "equitable grounds" put forward were the facts surrounding Trone's representation to Rauscher that the Kemper commercial policy provided the same coverage as his previous policy.

The district court denied the motion in an order dated March 31, 1986. In its consideration of the issue of the Griffiths' standing to participate as sole defendants in the case, the court stated that their motion for reconsideration presented "no grounds for relief," and that the Griffiths had "no standing to seek reformation of the Kemper policy." App. at 184. After dismissing the Griffiths' claim of standing, and therefore acknowledging the court's lack of jur-

isdiction over the matter, the district court went on to discuss the merits of the insurance policy claim and concluded that the Griffiths' claim for reformation had no merit.

The Griffiths timely appealed from the motion for reconsideration. This court's jurisdiction rests on 28 U.S.C. § 1291.

## II.

■ For purposes of Rule 4(a) of the Federal Rules of Appellate Procedure, we view a motion characterized only as a motion for reconsideration as the "functional equivalent" of a Rule 59(e) motion to alter or amend a judgment. *Venen v. Sweet,* 758 F.2d 117, 122 (3d Cir.1985). A Rule 59(e) motion tolls the time for the filing of a notice of appeal under Federal Rule of Appellate Procedure 4(a)(4)(iii), and, in effect, "suspends" the finality of the initial judgment. 6A J. Moore, *Moore's Federal Practice* ¶ 59.15[4]. If the motion is denied, the judgment of the initial order becomes final and subject to appeal.

■ A timely appeal from a denial of a Rule 59 motion to alter or amend "brings up the underlying judgment for review." *Quality Prefabrication v. Daniel J. Keating Co.,* 675 F.2d 77, 78 (3d Cir.1982). Therefore, the standard of review for a denial of a motion for reconsideration varies with the nature of the underlying judicial decision. Here, it is the underlying summary judgment against the Griffiths that this court must review. *See Woodham v. American Cystoscope Co. of Pelham, N.Y.,* 335 F.2d 551 (5th Cir.1964) (the order appealed from was the order dismissing the complaint, not the denial of the 59(e) motion).

We have held that although the appropriate standard of review for a motion to reconsider is generally abuse of discretion, if the district court's denial was based upon the interpretation or application of a legal precept, then review of the district court's decision is plenary. *Koshatka v. Philadelphia Newspapers, Inc.,* 762 F.2d 329, 333 (3d Cir.1985) (court had plenary review of

denial of a motion to reconsider a summary judgment); *see Huff v. Metropolitan Life Ins.*, 675 F.2d 119 (6th Cir.1982); 6A J. Moore, *supra,* ¶ 59.15[4].

■ In this case, the denial of the motion to reconsider hinged upon the legal determination that the Griffiths had no standing in the instant declaratory judgment action, and that the entry of judgment against them was therefore proper. When addressing a summary judgment decision, a reviewing court has plenary review. Indeed, it occupies the same adjudicating position as the district court. Therefore, our review of the district court's conclusion that the Griffiths had no standing and that the rights of the Griffiths were derivative of Rauscher's rights is plenary.

### III.

The thrust of the district court's rulings simply stated is that when default judgment was rendered against Rauscher, judgment had to be entered against the Griffiths as well. In its first memorandum opinion, the district court stated that the Griffiths' "rights under the plaintiff's insurance policy [were] purely derivative, and [could not] survive the declaratory judgment against Mr. Rauscher, the plaintiff's insured." App. at 59. That same principle was cited again in the district court's subsequent opinion rendered on March 31, 1985, followed by the court's conclusion that the Griffiths had no standing to seek reformation of the Kemper policy.

Thus the district court denied the Griffiths' motion for reconsideration finding that no grounds existed for relief. At the same time, however, the district court proceeded to address the merits of the Griffiths' claim with respect to reformation. Although no trial had been held, the district court decided the issue of reformation against the Griffiths, finding that Rauscher was disinterested in the policy provisions, had never bothered to read the Prudential or Kemper policy, and, because of a desire to spend less on premiums, replaced his Prudential policy granting greater coverage with the Kemper policy.

On appeal, the Griffiths, focusing on the district court's holding that the Griffiths had no standing, argued that because the Griffiths were indispensable parties, the district court could not and should not have entered judgment against them for lack of standing.

Kemper, on the other hand, did not address the issue of standing, undoubtedly because Kemper's complaint had properly joined the Griffiths as defendants as "necessary parties." App. at 4. Indeed, at oral argument Kemper conceded that there was no question that the Griffiths had standing. Kemper's argument on appeal, while eschewing all references to standing, was an argument that its insurance policy should not be reformed. Thus Kemper basically agreed with the district court's discussion of the merits.

The posture of the appeal as presented to us gave little definition to what the district court intended by its statement that the Griffiths had no standing. To the extent that the parties did not join issue on what we regard as the primary question in the case, we have been left to our own devices to construe the manner in which we should resolve this appeal. Consequently, because we are in doubt as to the district court's analysis which refers to a "lack of standing" on part of the Griffiths because of their derivative capacity, we have construed the district court's decision as being predicated on a lack of "case or controversy" in the contest between the Griffiths and Kemper.

We make this assumption because, as we have noted, judgment had been rendered against the Griffiths without trial. It will be remembered that Kemper brought a motion for default judgment *against Rauscher only.* However, the district court not only entered judgment against Rauscher but simultaneously entered judgment against the Griffiths. It did so on the basis of its conclusion that the rights of the Griffiths were completely dependent upon, and derivative of, any rights that Rauscher had. At that stage of the proceedings,

depositions had not yet been taken and, although the Griffiths had answered the complaint, they had not been named in any motion proceedings. Yet, without trial and without motion proceedings, summary judgment was entered against the Griffiths and in favor of Kemper.

Pending the Griffiths' motion for reconsideration, depositions were taken. The depositions revealed that the insurance broker had informed Rauscher that coverage under Kemper's less expensive policy was the same as the coverage provided by the more expensive Prudential policy—a policy which apparently would have covered the accident. The depositions left open the question of whether Rauscher had even received or read the Kemper policy before the accident occurred. It was with the case at this stage that the Griffiths sought to have the district court reconsider its summary judgment ruling.

The district court referred to the various depositions in its later opinion even though the motion for reconsideration was not processed as a normal summary judgment motion might have been. Due to the unusual procedural setting in which the district court ruled against the Griffiths, where no trial had been held despite the presence of contested facts, where no appropriate summary judgment proceedings were developed, and where no opportunity for the Griffiths to present their claims was allowed, we are forced to the conclusion that the district court must have been relying on a lack of its jurisdiction to support its decision. Such a lack of jurisdiction could only have resulted from the district court's conclusion that the Griffiths had no standing. It is on this basis that we approach that issue.

## IV.

■ The judicial authority of the federal courts is defined, in part, by the Article III, § 2 requirement that each case before the courts must involve a "case" or "controversy." This constitutional phrase has been judicially interpreted many times resulting in the development of the related doctrines of justiciability. These include, among other things, the concepts of mootness, political question—and most important to us in this case—standing to litigate. Underlying all of these doctrines is the concern that the exercise of judicial authority must be properly limited in a democratic society. *Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556, *reh'g denied,* 468 U.S. 1250, 105 S.Ct. 51, 82 L.Ed.2d 942 (1984); *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975).

■ In this case, we are concerned with the basic justiciability requirement that each case decided by the federal courts be a "case or controversy," an action which by its nature is concrete and ripe. As succinctly described by the Supreme Court in *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1936), *reh'g denied,* 300 U.S. 687, 57 S.Ct. 667, 81 L.Ed. 889 (1937):

> A "controversy" in this sense must be one that is appropriate for judicial determination. A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. The controversy must be definite and concrete, touching upon the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Id.* at 240–41, 57 S.Ct. at 463–64 (citations omitted).

At first glance, the district court's language regarding the Griffiths' lack of "standing" draws the doctrine of standing to sue to the forefront of this analysis. Standing to sue is "perhaps the most important" doctrinal outgrowth of the constitutional case-or-controversy requirement. *Allen,* 468 U.S. at 750, 104 S.Ct. at 3324. As do the other doctrines noted above, the

concept of standing presents "fundamental limits on federal judicial power in our system of government." *Id.* Under the tenets of the standing doctrine, a federal court may not exercise jurisdiction over cases in which the plaintiff does not have the proper standing to put forward a certain cause of action. Standing requires that the plaintiff "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct" which is "likely to be redressed by the requested relief." *Id.* at 751, 104 S.Ct. at 3324.

While the concept of standing is implicated in the case at hand, it is subsumed in the case-or-controversy analysis performed below. Inherent in the conclusion that there is a "case or controversy" in the contest between Kemper and the Griffiths is the determination that the Griffiths have standing to reform the insurance contract. For if there is a distinct "case or controversy" between the Griffiths and the insurance company, then as pleaded by Kemper in its complaint, the Griffiths are necessary parties. They may therefore assert that the policy covered Rauscher and, if necessary, may act to reform the policy to reflect such coverage.[2] Consequently, we approach the issue of standing only through the avenue of a basic case-or-controversy analysis.

We must determine whether the rights of an injured party within the procedural context of a declaratory judgment action are truly derivative of the rights of the co-defendant insured. If the rights of the injured party, in this case the Griffiths, are derivative, and not independent, then a default judgment against the insured must lead to a judgment against the injured par-

ty. The federal court would no longer have proper jurisdiction over the case, because in the absence of the insured, in this case Rauscher, there would be no real dispute between Kemper, the insurance company, and the Griffiths, the injured parties.

On the other hand, if there existed a "case or controversy" between the insurance company and the injured party then the default judgment against the insured would not oust the court of jurisdiction over the matter; the case would be justiciable even in the absence of the insured.

## A.

The Federal Declaratory Judgment Act, 28 U.S.C. § 2201, provides a unique procedural remedy to the litigants that choose to utilize it. Section 2201(a) provides:

> In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

Rule 57 of the Federal Rules of Civil Procedure[3] provides for the use of the declaratory judgment remedy in the federal courts. The remedy provided for in Rule 57 does not extend the jurisdiction of the federal courts. *See Weaver v. Wilcox,* 650 F.2d 22, 25 (3d Cir.1981). Every case brought under the Act still must fall within federal jurisdiction and present a justiciable issue. *See* 6A J. Moore, *supra,* ¶ 57.02[5]. In the statutory language of § 2201, the remedy

---

**2.** Whether or not the Griffiths as a matter on the merits have the right to reform the insurance policy based on the facts of this case is a separate inquiry which should be undertaken by the district court in the first instance.

**3.** Rule 57 of the Federal Rules of Civil Procedure states: "The procedure for obtaining a declaratory judgment pursuant to Title 28 U.S.C. § 2201, shall be in accordance with these rules,

and the right to trial by jury may be demanded under the circumstances and in the manner provided in Rules 38 and 39. The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate. The court may order a speedy hearing of an action for declaratory judgment and may advance it on the calendar."

may only be granted whenever there is an "actual controversy" based upon independent jurisdictional grounds.

 It is settled law that, as a procedural remedy, the federal rules respecting declaratory judgment actions, apply in diversity cases. While state law must determine the substantive rights and duties of the parties to the insurance contract, the question of justiciability is a federal issue to be determined only by federal law. "Thus a federal court decides for itself whether a party has standing to raise a particular issue, or that a particular matter is justiciable or that it is not." 6A J. Moore, *supra*, ¶ 57.02[5]. If it were otherwise, then when state law exhibited more leniency in its definition of "case or controversy," the federal courts would be improperly exercising federal jurisdiction over a diversity action.

In this case, however, no differences appear between federal and Pennsylvania decisional law giving content to "case or controversy." Both federal and Pennsylvania law addressing the issue of an injured party's standing in a declaratory judgment action have reached the conclusion that an injured party does have standing.

The leading federal case in this area is *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941). *Maryland Casualty* concerned a declaratory judgment action brought by an insurance company against its insured, Pacific Coal, and the injured party, Orteca. Plaintiff Maryland Casualty Company claimed that the truck involved in the accident between its insured and Orteca was not one which was covered under its insurance policy with Pacific Coal, and consequently, it was not liable for defending or indemnifying Pacific Coal in a pending state court action brought by Orteca. Orteca demurred to the complaint, asserting that it did not state a cause of action against him.

The Supreme Court addressed the issue of whether a "case or controversy," within the meaning of the declaratory judgment statute and within the meaning of the Constitution, existed between Maryland Casualty and Orteca, the injured party. The Court concluded that an actual controversy existed between Maryland Casualty and Orteca. If it reached the opposite conclusion, the Court noted, the federal court and the state court might interpret the policy differently, and Orteca, if he were not part of the federal proceeding, could not be bound by the federal interpretation of the policy.

The Seventh Circuit case of *Hawkeye-Security Insurance Co. v. Schulte*, 302 F.2d 174 (7th Cir.1962) is strikingly similar to the one at hand. Following an automobile accident involving a DeSoto owned by the insured Schulte and a vehicle driven by Ginley, the Hawkeye-Security Insurance Company brought a declaratory judgment action against the insured party, Schulte; his son, the driver; and Ginley, the injured party. Hawkeye-Security sought a declaration that its policy did not cover the insured's son, the driver at the time of the accident.

Schulte and his son failed to answer the complaint and default judgment was entered against them. In its consideration of Hawkeye-Security's motion for a default judgment, the district court concluded that Ginley was only a "nominal party" to the suit and that he was not entitled to relief in the suit because he was not a party to the insurance contract. The district court then directed that Ginley be dismissed. As in our case, the injured party "was precluded from litigating the issue raised by his answer to the complaint," because the district court "determined the merits of the complaint on the default of the other two defendants contrary to [the injured party's] contentions." *Id.* at 176.

The Seventh Circuit, citing *Maryland Casualty*, stated that it would be anomalous to hold that while an actual controversy existed between an insurance company and an injured party, an injured party could

be denied the right to actually participate in the controversy. *Id.* at 177. As the court stated: "Appellee [the insurance company] voluntarily brought the appellant [the injured party] into this litigation as a party defendant." *Id.* As a proper party to the action, Ginley, "should be heard to assert any proper defense raised by his answer to the complaint." *Id.* The court of appeals therefore held that the district court erred in dismissing the injured party Ginley from the declaratory judgment action brought by Hawkeye-Security. *See Standard Accident Ins. Co. v. Meadows,* 125 F.2d 422 (5th Cir.1942) (plain error to dismiss injured parties from a declaratory judgment action brought by insurance company on the issue of coverage).

■ The principles announced in these cases lead inevitably to the conclusion that a "case or controversy" exists between Kemper and the Griffiths, and that therefore the Griffiths have standing to defend the declaratory judgment action despite the absence of Rauscher, the actual insured.

In *Maryland Casualty,* as we have discussed, the Supreme Court briefly reviewed the substantive rights of an injured party under state law, concluding that Ohio law supported its conclusion that an actual controversy existed between the parties. In the present case, state law defining the rights of the parties in an insurance dispute such as this one reinforces that conclusion. In fact, on the specific issue of the standing of an injured party in the context of a state declaratory judgment action, the Pennsylvania Supreme Court has adopted the holding of *Maryland Casualty.*

In *Allstate Insurance Company v. Stinger,* 400 Pa. 533, 163 A.2d 74 (1960), the Pennsylvania Supreme Court addressed, among other issues, the right of an injured party to intervene in a declarato-

ry judgment action brought by the insurance company against its insured. The trial court initially allowed the injured parties to participate in the action, but refused intervention in its last order and found the insurance policy to be void.

The Pennsylvania Supreme Court held that the denial of the petition to intervene was error. In the course of its discussion, the court cited to the Uniform Declaratory Judgments Act,[4] which was in effect in Pennsylvania, and which stated in pertinent part that "any person interested ... in a written contract, or other writings constituting a contract ... may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise, and obtain a declaration of rights, status, or other legal relations thereunder." The Pennsylvania Supreme Court then noted that the lower court's determination that "a stranger to the contract of insurance has no rights when the contract is void *ab initio*" begs the questions of whether injured parties are "strangers," and whether the policy is valid. *Id.,* 163 A.2d at 76.

The court went on to cite with approval the *Maryland Casualty* holding that there is an actual controversy between the insurance company and the injured third party. The Pennsylvania Supreme Court then held that "the rights of the appellants Manko [the injured parties], as plaintiffs against the insured Stinger, are affected by the policy, that they are interested persons, and that they are therefore entitled to have their rights declared." *Id.* In other words, the injured parties have standing as "interested parties" within the meaning of the Pennsylvania statute.

It is clear that under the authority of these cases an actual controversy, within both the meaning of the Federal Declaratory Judgment Act and the Constitution, ex-

4. The Uniform Declaratory Judgment Act has been adopted by thirty-nine states, Puerto Rico and the Virgin Islands. 6A J. Moore, *Moore's Federal Practice* ¶ 57.02[1]. While the Act is more detailed than the Federal Declaratory Judgment Act, it has been used by federal courts to aid in the interpretation of the federal act. *Id.*

ists between Kemper and the Griffiths. Kemper brought this action against both Rauscher and the Griffiths in hopes of attaining a binding judgment against both its insured and the injured parties. As we have noted earlier, Kemper named the Griffiths as defendants and supported that action in their complaint by alleging that the Griffiths were joined as necessary parties. Moreover, at oral argument, Kemper admitted that the Griffiths had standing, and, indeed, did not argue otherwise in their brief on appeal.

### B.

■ Although it is not necessary to our analysis or our conclusion, we note that our decision is supported by the fact that the Griffiths are indispensable parties to this

type of declaratory judgment action [5] and, under Pennsylvania No-Fault Law, are capable of bringing a direct action against Kemper.[6] Indeed, because it has been held that a "case or controversy" exists between the insurance company and the injured parties in the instant procedural posture, it would be error to hold that the default of the insured could foreclose the rights of injured parties.

Concluding that the injured party has an independent, and not a derivative right, to be heard, is not only jurisprudentially sound, but is also realistic: "Certainly from a pragmatic viewpoint, it is quite true that in many of the liability insurance cases, the most real dispute is between the injured third party and the insurance company, not between the injured and an oftentimes impecunious insured." 6A J. Moore, *supra*,

---

**5.** The Griffiths argued before us that they are indispensable parties to the declaratory judgment action and therefore that the default judgment against Rauscher does not destroy their rights. Rule 19 of the Federal Rules of Civil Procedure defines indispensability. A brief analysis of the facts of this case under Rule 19 leads to the conclusion that the most relevant inquiry in the Rule 19 analysis is whether full relief can be accorded Kemper without joining the Griffiths, the injured party. Such an inquiry leads to the conclusion that the Griffiths are indispensable parties to the action.

The Third Circuit has recognized that, in a declaratory judgment proceeding involving an automobile liability policy, an injured person is a "necessary and proper" party. *Maryland Casualty Co. v. Consumers Finance Service*, 101 F.2d 514 (3d Cir.1938) (pre-Rule 19); *United States Fidelity and Guaranty Co. v. Ditoro*, 206 F.Supp. 528, 532–33 (M.D.Pa.1962).

In *Ranger Ins. Co. v. United Housing of New Mexico*, 488 F.2d 682 (5th Cir.1974), the Fifth Circuit concluded that claimants were indispensable parties in a declaratory judgment action. Moreover, Pennsylvania law holds that the injured (or her representative) is an indispensable party in a declaratory judgment action on the determination of coverage. *Vale Chemical Co. v. Hartford Accident & Indem. Co.*, 516 A.2d 684 (Pa.1986); *Carlsson v. Penn. Gen. Ins. Co.*, 417 Pa. 356, 207 A.2d 759 (1965); *Township of Pleasant v. Erie Ins. Exch.*, 22 Pa.Commw. 307, 348 A.2d 477 (1975); *see also Keystone Ins. Co. v. Warehouse & Equip. Corp.*, 402 Pa. 318, 165 A.2d 608 (1960) (injured's representative was "necessary party").

Under Rule 19 and the above cases, the Griffiths qualify as indispensable parties in this ac-

tion. While we regard the issue raised in this case as one of standing, not indispensability, it nevertheless appears that the Griffiths, as they have argued, are indispensable parties. As such, of course, they would have standing even apart from our analysis in the text.

**6.** Under the Pennsylvania No-Fault Insurance Law § 204(a), Pa.Stat.Ann. tit. 40, § 1009.204(a) (repealed), in effect at the time of the accident, the Griffiths would have a direct right of action against Federal Kemper. Pennsylvania common law states that there may be no direct action by a claimant against an insured in the absence of statutory or contractual authority. *See Pettus v. Jones & Laughlin Steel Corp.*, 322 F.Supp. 1078, 1081 (W.D.Pa.1971). Contrary to the appellee's assertion that the "Griffiths' attempt to assert a cause of action directly against Kemper to force reformation verges on the frivolous." Appellee's Brief at 11 n. 1, Pennsylvania has recognized such a statutory right in § 204(a) of the No-Fault Act.

In *Nelms v. Erie Insurance Group*, 23 Pa.D. & C.3d 491, 494 (1982), the Pennsylvania state court held that § 204(a) permitted a direct right of action by an occupant of a car against the insurance carrier of the driver. The court cited in support of its holding *Singer v. Nationwide Insurance Co.*, 274 Pa.Super. 359, 418 A.2d 446 (1980), and *Hayes v. Erie Insurance Exchange*, 261 Pa.Super. 171, 395 A.2d 1370 (1978), in which claimants brought actions directly against insurers to collect benefits. This right of direct action bolsters the conclusion that the Griffiths have standing in this declaratory judgment action even in the absence of the insured.

¶ 57.19. In terms of fairness, the injured party should be able to present its case upon the ultimate issues, even if the insured does not choose to participate.

 This equitable consideration is especially persuasive in view of the fact that the insurance company in this case initiated the action and brought the Griffiths into federal court. As a result it would be anomalous to hold that the Griffiths should not be given an opportunity to establish their case against Kemper because of a default which they could not prevent. We are satisfied therefore that the Griffiths had standing and that their rights are independent and not derivative of Rauscher's.

## V.

Having resolved that the Griffiths have standing, the resolution of the questions on the merits of the reformation claim is left to the district court. After an appropriate record has been developed, it will be for that court, pursuant to applicable procedures, to decide the Griffiths' claims. As we have indicated earlier, we do not believe that these claims can be properly determined on the existing record.

We will therefore reverse the district court's judgment entered against the appellants, the Griffiths, and remand to the district court for further proceedings consistent with this opinion.