**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-1106
_____

AMERICAN AUTOMOBILE INSURANCE COMPANY

v.

TYRONE MURRAY;
TYRONE MURRAY doing business as
OLNEY BUSINESS CENTER;
ENNIE, INC. doing business as
SAM'S BEER DISTRIBUTOR;
*EDWARD R. EASTER, as Executor of the
Estate of James S. Easter, Jr.;
JEANNETTE I. EASTER, as the Administrator
of the Estate of Jessica Lynne Easter;
STEPHEN L. MELONI

Ennie, Inc. d/b/a Sam's Beer Distributor,

Appellant

(Amended  Pursuant to Fed. R. App. P. 43(a)
See Clerk's Order dated 11/17/09)

_____

No. 09-1248
_____

AMERICAN AUTOMOBILE INSURANCE COMPANY

v.

TYRONE MURRAY;
TYRONE MURRAY
doing business as
OLNEY BUSINESS CENTER;
ENNIE, INC.
doing business as
SAM'S BEER DISTRIBUTOR;
*EDWARD R. EASTER as Executor of the
Estate of James S. Easter, Jr.;
*JEANNETTE I. EASTER as the Administrator
of the Estate of Jessica Lynne Easter;
STEPHEN L. MELONI

*Jeannette I. Easter, as the Administrator
of the Estate of Jessica Lynne Easter,

Appellant

(Amended pursuant to Fed. R. App. P. 43(a)
See Clerk's Order dated 11/17/09)
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania

(Civ. No. 08-1680)
District Judge:  Hon. Robert F. Kelly, Sr.

Argued September 23, 2010

Before:  MCKEE, <u>Chief Judge</u>, AMBRO, and CHAGARES,
<u>Circuit Judges</u>.

(Filed: September 7, 2011)

Roberta D. Pichini, Esq.
Thomas Martin, Esq. (Argued)
Feldman, Shepherd, Wohlgelernter, Tanner, Weinstock &
Dodig
1845 Walnut St.
25th Floor
Philadelphia, Pennsylvania 19103
<u>Counsel for Appellants Edward R. Easter and Jeanette I.
Easter, Administrators</u>

John J. D'Lauro, Esq.
D'Lauro & Dickerson, PC
1528 Walnut St.
Suite 1201
Philadelphia, Pennsylvania 19102
<u>Counsel for Appellant Ennie, Inc., d/b/a Sam's Beer
Distributor</u>

Bethany Culp (Argued)
Douglas A. Johns
Hinshaw & Culbertson LLP
333 South Seventh St.
Suite 2000

Minneapolis, Minnesota 55402

Joseph C. Monahan
Braden Borger
Saul Ewing LLP
Centre Square West
1500 Market St.
38th Floor
Philadelphia, Pennsylvania 19102
Counsel for Appellee American Automobile Insurance
Company


Scott E. Miller, Esq.
P. O. Box 562
Ardmore, PA  19003
Counsel for Appellees Tyrone Murray and
Olney Business Center


_____

OPINION

_____


CHAGARES, Circuit Judge.

James S. Easter, Jr.[1] and Ennie, Inc. ("Ennie") appeal
the District Court's grant of summary judgment to American

_____

[1] James S. Easter, Jr. died during the pendency of these
proceedings.  Pursuant to Fed. R. App. P. 43, Edward R.

Automobile Insurance Company ("AAIC") and denial of their motion for summary judgment in this declaratory judgment action. Specifically, AAIC sought and received a declaratory judgment that its insured, insurance agent Tyrone Murray, is not covered under its professional liability policy. This case presents a threshold issue of whether Easter and Ennie have standing to appeal. We conclude that Ennie has standing to appeal as a directly injured party of the insured (Murray), but that Easter does not have standing to appeal because his interests in this case are too remote and speculative.

On the policy coverage issue, we agree with the District Court that Murray was not covered under AAIC's policy. Thus, for the reasons that follow, we will affirm the District Court's judgment.

I.

On March 23, 2006, nineteen-year-old Stephen Meloni drove his vehicle while intoxicated and struck a pole, tragically killing his passenger, Jessica Easter. James S. Easter, Jr. individually and as the Administrator of the Estate of his daughter Jessica, filed a lawsuit on October 25, 2006, against Ennie and Steven L. Meloni in the Philadelphia County Court of Common Pleas ("Easter lawsuit"). Easter alleged that Ennie illegally sold alcohol to nineteen-year-old Gary Grato, who then supplied that alcohol to Meloni causing him to operate his vehicle negligently and recklessly.

---

Easter and Jeanette I. Easter have been substituted as parties in his place.

5

In response to the lawsuit, Ennie sought a defense and indemnification from its general liability insurer, Century Surety Company ("Century"). Century provided Ennie with a defense under a reservation of rights and then filed a declaratory judgment action in the United States District Court for the Eastern District of Pennsylvania. The District Court granted summary judgment to Century, declaring that Century did not owe Ennie a defense or indemnification for the Easter lawsuit because the insurance policy in effect during the relevant time period contained a liquor liability exclusion.

Consequently, on November 27, 2007, Ennie filed a lawsuit ("Ennie lawsuit") against its insurance agent, Tyrone Murray, alleging that Murray negligently failed to place liquor liability insurance coverage for Ennie. Through its principal Thai Poeng, Ennie claimed that it consulted with Murray on August 23, 2000, with the purpose of obtaining insurance that would protect the company from any and all risks arising out of the business of operating a beer distributorship. Ennie alleged that in 2002, Murray sold it the Century insurance policy under the pretense that it protected Ennie from these risks. With this belief, Ennie renewed that policy annually through Murray. Murray attested that Poeng renewed the Century policy that was in effect during March 2006 in December 2005, and that this policy did not contain liquor liability coverage. Hence, Ennie alleged that Murray, as a licensed commercial insurance agent, breached his duty to advise it properly of the necessity or availability of liquor liability coverage. Ennie contends that due to this breach of duty, it was required to pay the costs of its own defense in the Easter lawsuit and has been subjected to a potential adverse judgment arising out of the lawsuit.

In response to the Ennie lawsuit, Murray sought a defense under his professional liability policy with AAIC. Murray, as an insurance agent with The Agents & Brokers of Infinity Property Casualty Corp., enrolled online for his own insurance coverage through AAIC, which provided a "claims made and reported" errors and omissions liability policy. The first AAIC policy was issued to Murray on January 1, 2006, providing coverage from January 1, 2006 through January 1, 2007. The policy was properly renewed and Murray continued to receive coverage from AAIC for the period of January 1, 2007 through January 1, 2008. Murray's AAIC policy contains the following relevant language:

> NOTICE – THIS IS A "CLAIMS MADE AND REPORTED POLICY"
>
> THIS MEANS THAT COVERAGE APPLIES ONLY TO A CLAIM FIRST MADE AGAINST THE INSURED AND REPORTED DURING THE POLICY PERIOD OR, IF APPLICABLE, DURING THE EXTENDED REPORTING PERIOD.
>
> * * *
>
> I. COVERAGE
>
> A. Insuring Agreements

7

1. Agents Error and Omissions Liability

We will pay on the Agent's behalf all Loss which such Agent is legally obligated to pay as a result of a Claim first made against such Agent or its Agency/Agency Staff and reported to Us during the Policy Period in accordance with Section VI. Conditions 1.2., provided that such Claim is for a Wrongful Act in the

> rendering of or failure to render Professional Services in connection with a Covered Product if that Wrongful Act occurs wholly after the Retroactive Date.

\* \* \*

## II.    DEFINITIONS

C.    Claim, either in the singular or plural, means:

1. Any written demand You receive for compensatory damages or services for a Wrongful Act including but not limited to the

9

institution of arbitration proceedings against You, or

2. Any civil proceeding seeking compensatory damages against You for a Wrongful Act commenced by the service of a complaint or similar pleading.

All Claims against the Insured arising out of the same Wrongful Act or Interrelated Wrongful Acts [of one or more of the Insured] will be considered one Claim. All Claims arising out of Interrelated Wrongful Acts will be considered first made at the time the earliest such Claim

10

was made against the Insured.

\* \* \*

Q.  Wrongful Act, either in the singular or plural, means:

1. <u>Any actual or alleged negligent act, error or omission, or negligent misstatement or misleading statement by any Agent or its Agency/Agency Staff in the rendering of or failure to render Professional Services</u>; or

2. Any actual or alleged negligent Personal Injury arising out of any Agent's or its Agency/Agency Staff's rendering

11

of or failure to render Professional Services.

3. Appendix ("App.") 64, 66, 69 (emphases added).

The AAIC policy also contains the following amendatory endorsement:

**Retroactive Date** means the earlier of;

1. The **Retroactive Date**, if any, shown on the Agent's Property/Casualty Insurance Agent's Error and Omissions Liability Policy;

   a. Which immediately preceded the first policy

12

American Automobile Insurance Company issued to the **Agent**; or

b. Which immediately preceded the date the Agent was first added to the American Automobile Insurance Company Policy, if the **Agent** was added after the inception date of

13

the first American Automobile Insurance Company Policy, provided that there is no lapse in coverage between the termination date of that other policy and the inception date of coverage for the **Agent** under the Automobile Insurance Company Policy.

If a lapse in coverage exists, the **Retroactive Date** shall be:

a. The inception date of the first Policy Automobile Insurance Company issued to the **Agent**; or

b. The inception date of coverage when the **Agent** was first added to the American Automobile Insurance Company Policy, if the **Agent** was added after the inception of the first

15

American Automobile Insurance Company Policy.

2. The **Retroactive Date** for the **Sponsoring Company** shall be the same as is applicable to the **Agent** whose **Wrongful Act** gave rise to the **Claim** against the **Sponsoring Company**, and the **Retroactive Date** for the **Agency/Agency Staff** shall be the same as is applicable to the **Agent** who is

responsible for such **Agency/Agency Staff**.

App. 90. Prior to his relationship with AAIC, Murray was covered under a liability policy from United States Liability Insurance Company ("USLIC") from the period of November 24, 2004 through November 24, 2005. That policy had a retroactive date of November 24, 2004. Hence, Murray had a lapse in professional liability coverage from November 25, 2005 through December 31, 2005, immediately proceeding the January 1, 2006 effective date of the first AAIC policy.

Murray tendered his defense of the Ennie lawsuit to AAIC, and AAIC provided Murray with a defense under a reservation of rights to deny coverage and to seek recompense of all costs expended if it was determined that the AAIC policy did not provide Murray coverage. On May 8, 2008, AAIC filed the present declaratory judgment action against Murray, Ennie, and Easter in the United States District Court for the Eastern District of Pennsylvania, and subsequently filed a motion for summary judgment claiming that Murray's actions that were the basis for the Ennie lawsuit were not covered under the AAIC policy. Ennie and Easter cross-moved for summary judgment. The main issues in dispute were the determination of the policy's retroactive date, the date upon which the wrongful acts occurred, and whether the wrongful acts took place wholly after the retroactive date. Easter and Ennie argued that AAIC must provide coverage because the retroactive date for the policy was November 24, 2004, and Murray's wrongful act of failing to insure Ennie for liquor liability insurance on March 21, 2006, occurred after

17

the retroactive date. AAIC, on the other hand, maintained that Ennie was not covered under the policy because the retroactive date of the policy was January 1, 2006, and Murray's wrongful act of failing to provide liquor liability insurance occurred in 2002 and continued at each policy renewal.

On December 15, 2008, the District Court granted summary judgment to AAIC, finding that Murray's wrongful act did not occur wholly after the AAIC policy's January 1, 2006 retroactive date and, therefore, Murray was not covered under the policy. In January 2009, Ennie and Easter[2] filed timely notices of appeal from the District Court's judgment.[3]

II.

We raised the issue of standing sua sponte and as a threshold matter must determine whether Easter and Ennie are permitted to challenge the District Court's order. Article III of the Constitution limits the federal courts to adjudication of actual "[c]ases" and "[c]ontroversies." U.S. Const. art. III, § 2, cl. 1. "Courts enforce the case-or-controversy requirement through the several justiciability doctrines[,] . . . [p]erhaps the most important of [which] is standing." <u>Toll Bros., Inc. v. Twp. of Readington</u>, 555 F.3d 131, 137 (3d Cir.

---

[2] Murray failed to file a timely notice of appeal of the District Court's grant of summary judgment and therefore has waived his right to appeal.

[3] The District Court had diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1). We have jurisdiction under 28 U.S.C. § 1291.

2009) (quotation marks omitted). Standing circumscribes the federal judicial power by requiring a litigant to show that it is entitled to have the court decide the merits of its case. Allen v. Wright, 468 U.S. 737, 750-51 (1984). The three constitutional elements of standing are: (1) an "injury in fact," that is, a concrete and particularized invasion of a legally protected interest that is actual or imminent, not conjectural or hypothetical; (2) causation, the showing of a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant; and (3) redressability, that is, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

The controlling case in this Court on whether injured parties have standing in a declaratory judgment action in the insurance coverage context is Federal Kemper Insurance Co. v. Rauscher, 807 F.2d 345 (3d Cir. 1986).[4] In that case, the

---

[4] We afforded the parties the opportunity to address the standing issue, and in our correspondence to the parties we cited both Rauscher and Liberty Mutual Insurance Co. v. Treesdale, 419 F.3d 216 (3d Cir. 2005), as potentially controlling authority. The parties inevitably agreed that Rauscher (and not Treesdale) controls. Our Treesdale opinion is inapplicable because, unlike Rauscher and the case at hand, it dealt solely with the standard for intervention under Fed. R. Civ. P. 24, and altogether failed to discuss or address the principle of standing. Further, we note that neither this Court nor the Supreme Court has determined whether a potential intervenor must even have Article III standing. See Diamond v. Charles, 476 U.S. 54, 68-69 (1986)

19

insured driver, Rauscher, and his two passengers were involved in an automobile accident, leaving one passenger permanently disabled. Id. at 347. The insurance company, Kemper, filed a complaint for a declaratory judgment against Rauscher and his passengers, asking the District Court to construe Rauscher's insurance policy as not covering the accident. Id. at 348. Rauscher failed to answer, and the

---

("We need not decide today whether a party seeking to intervene before a district court must satisfy not only the requirements of Rule 24(a)(2), but also the requirements of Art. III."). Those Courts of Appeals that have addressed this issue have been split. Compare Ruiz v. Estelle, 161 F.3d 814, 830 (5th Cir. 1998) (holding that Article III standing is not a prerequisite to intervention), Associated Builders & Contractors v. Perry, 16 F.3d 688, 690 (6th Cir. 1994) (same), Yniguez v. Arizona, 939 F.2d 727, 731 (9th Cir. 1991) (same), Chiles v. Thornburgh, 865 F.2d 1197, 1213 (11th Cir. 1989) (same), and United States Postal Serv. v. Brennan, 579 F.2d 188, 190 (2d Cir. 1978) (same), with Mausolf v. Babbitt, 85 F.3d 1295, 1300 (8th Cir. 1996) (holding that Article III standing is necessary for intervention), and United States v. 36.96 Acres of Land, 754 F.2d 855, 859 (7th Cir. 1985) (concluding that intervention under Rule 24 requires interest greater than that of standing). Because it did not explicitly mention standing – or even Rauscher – we will not assume that the Court in Treesdale contemplated standing in relation to its analysis of intervention and we need not today resolve the issue of whether a party seeking to intervene must have Article III standing. Because Treesdale is not on point and Rauscher directly addresses standing in a similar factual setting, Rauscher will guide our analysis.

20

District Court granted a default judgment to Kemper against Rauscher and the passengers, holding that the passengers' rights were merely derivative of Rauscher's rights. Id. We reversed, holding that a "case or controversy" existed between the insurance company and the injured passengers and, therefore, the passengers had standing to defend the declaratory judgment despite Rauscher's absence. Id. at 353-54.

In reaching this conclusion, we noted that the critical determination for standing to sue in this scenario was "whether the rights of an injured party within the procedural context of a declaratory judgment action are truly derivative of the rights of the co-defendant insured." Id. at 351. If the rights of the injured party are derivative and not independent, then there would be no "case or controversy," as there would be no "real dispute" between the injured party and the insurance company. Id. We recognized that a "case or controversy" must exist between the insurance company and the injured third party under such circumstances, since the insurance company brought the declaratory judgment action against the injured third party in the hope of attaining a binding judgment against both the insured and the injured party. Id. at 354. Taking a "realistic" approach, we concluded that the injured party has an independent right to present its case upon the ultimate issues, apart from that of the insured, because "'in many of the liability insurance cases, the most real dispute is between the injured third party and the insurance company, not between the injured and oftentimes impecunious insured.'" Id. (quoting 6A James Wm. Moore et al., Moore's Federal Practice ¶ 57.19).

Applying the principles set forth in <u>Rauscher</u>, we conclude that Ennie has standing to appeal the District Court's order in this declaratory judgment action. Like the passengers in <u>Rauscher</u>, Ennie is the directly injured party and its interests in the lawsuit are, therefore, independent of the insured (Murray). Ennie has a particularized interest in the lawsuit because a determination of Murray's coverage would dictate its ability to receive the full benefit of the Ennie lawsuit.

The holding in <u>Rauscher</u>, however, does not extend to Easter, as he is an injured party twice-removed. Unlike Ennie, Easter's interests in this lawsuit are purely derivative of the injured third party's interests. Essentially, the only interest Easter has in the lawsuit is the potential pecuniary gain that will flow to him through Ennie, since he has failed to make any claims directly against the insured. For Easter to recover any of the insurance proceeds, he would have to prevail in his lawsuit against Ennie, which would have to prevail in its lawsuit against Murray, who would have to prevail on this appeal of the District Court's judgment in favor of AAIC. Counsel for Easter conceded at oral argument that standing here would be based on a "two-step process," and it is this "two-step process" that makes Easter's interest merely speculative. Notably, Easter has failed to identify a court that has permitted standing for a party with derivative claims of the injured third party in a declaratory judgment action between an insured and insurer. We conclude that Easter does not have standing to pursue this appeal, as his interests in this declaratory judgment action are too remote and speculative, absent any contractual assignment of rights

22

under the insurance policy.[5]  Therefore, only Ennie has standing to pursue this appeal.

[5] Easter also argues that his inclusion by AAIC in the lawsuit is determinative of his standing to appeal. We disagree. In Rauscher, we reasoned that the fact that Kemper brought a declaratory judgment action against the injured parties "in hopes of attaining a binding judgment against both its insured and the injured parties" was persuasive evidence that an "actual controversy" existed between them, and, therefore, that the injured parties had standing to defend the action. 807 F.2d at 353-54; see also Truck Ins. Exch. v. Ashland Oil, Inc., 951 F.2d 787, 789 (7th Cir. 1992) (holding that an insurer who brought a declaratory judgment action and "out of an abundance of caution" named the injured party as an additional defendant (1) must have thought the injured party had "some potential interest in the insurance policy" and (2) had "tacitly conceded [the injured party's] standing to appeal by not contesting the appeal on the ground of lack of standing"); Dairyland Ins. Co. v. Makover, 654 F.2d 1120, 1123 (5th Cir. 1981) (holding that the injured party had standing to appeal the declaratory judgment in favor of the insurance company and noting that it was "decisive" to the holding that Dairyland named the injured appellants in its declaratory judgment action); Auto. Underwriters Corp. v. Graves, 489 F.2d 625, 627-28 (8th Cir. 1973) (holding that "[a]n injured person having a possible claim against an insurer who has been made a party defendant to an action for declaratory judgment possesses the requisite interest to be heard on appeal").

Here, AAIC named Easter and Ennie in its declaratory judgment action and failed to contest the standing of either to

III.

appeal.  See AAIC Br. 14 (noting merely that neither Easter nor Ennie "has a claim against AAIC" and proceeding to address the merits).  On the surface, this weighs in favor of the argument that Easter has standing.  However, Easter's interests in any possible insurance proceeds are much more speculative than the injured parties in the cases cited above.  While AAIC named Easter in its declaratory judgment action, we do not believe that is enough to overcome what is otherwise a highly speculative, "mere economic" interest in insurance proceeds, conditioned upon success in two pending lawsuits (unlike the interests of the injured parties in both Rauscher and Dairyland whose interests were contingent only on success in one lawsuit).

Moreover, we recognize that parties are not permitted to waive constitutional standing.  United States v. Hays, 515 U.S. 737, 742 (1995) ("The question of standing is not subject to waiver . . . ."); Nat'l Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 255 (1994) ("Standing represents a jurisdictional requirement which remains open to review at all stages of the litigation."); Pressman-Gutman Co. v. First Union Nat'l Bank, 459 F.3d 383, 402 n.20 (3d Cir. 2006) (stating that Article III standing, "of course, is not subject to waiver").  Hence, a plaintiff's tacit concession of a defendant's standing by inclusion in the lawsuit cannot be dispositive.  Each party must show that it has satisfied the elements of standing and, specifically in this case, must have demonstrated that it has a concrete and imminent interest in the policy at issue to appeal.  See Diamond v. Charles, 476 U.S. 54, 63 (1986) ("[S]tatus as a 'party' does not equate with status as an appellant.").

We will now address the interpretation of the policy between AAIC and Murray to determine if AAIC is required to provide Murray with insurance coverage for the Ennie lawsuit. Our review of the District Court's grant of summary judgment is plenary, and we apply the same legal standard as it should have. Vitalo v. Cabot Corp., 399 F.3d 536, 542 (3d Cir. 2005). A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In conducting our analysis, we must view the record in the light most favorable to Ennie, and must draw all reasonable inferences in its favor. See Vitalo, 399 F.3d at 542. To defeat summary judgment, however, Ennie must "show[] that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

It is the function of the court to interpret insurance contracts under Pennsylvania law. Melrose Hotel Co. v. St. Paul Fire & Marine Ins. Co., 432 F. Supp. 2d 488, 495 (E.D. Pa. 2006) (citing 401 Fourth St., Inc. v. Investors Ins. Grp., 879 A.2d 166, 171 (Pa. 2005)).[6] The court's primary consideration in performing this function is "'to ascertain the intent of the parties as manifested by the language of the written instrument.'" Home Ins. Co. v. Law Offices of Jonathan DeYoung, 32 F. Supp. 2d 219, 223 (E.D. Pa. 1998) (quoting Standard Venetian Blind Co. v. Am. Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983)). The policy must be read

---

[6] The parties agree that Pennsylvania law applies to this appeal, as do we.

as a whole and construed in accordance with the plain meaning of terms. C.H. Heist Caribe Corp. v. Am. Home Assurance Co., 640 F.2d 479, 481 (3d Cir. 1981). Words of common usage must be "construed in their natural, plain, and ordinary sense, with a court free to consult a dictionary to inform its understanding of terms." Melrose Hotel Co., 423 F. Supp. 2d at 495 (citing Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 108 (Pa. 1999)).

Where the language of an insurance policy is clear and unambiguous, a court must enforce that language. Med. Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999). "Furthermore, if possible, 'a court should interpret the policy so as to avoid ambiguities and give effect to all of its provisions.'" Id. (quoting Little v. MGIC Indem. Corp., 836 F.2d 789, 793 (3d Cir. 1987)). However, if the contract's terms are reasonably susceptible to more than one interpretation, then they must be regarded as ambiguous. Id.; C.H. Heist Caribe Corp., 640 F.2d at 481. "'Ambiguous provisions in an insurance policy must be construed against the insurer and in favor of the insured; any reasonable interpretation offered by the insured, therefore, must control.'" Med. Protective Co., 198 F.3d at 104 (quoting McMillan v. State Mut. Life Assurance Co., 922 F.2d 1073, 1075 (3d Cir. 1990)). Pennsylvania courts have applied this rule liberally. Id.

A.

In determining AAIC's responsibility to provide insurance coverage to Murray, we must first address the retroactive date of the AAIC policy and then decide whether Murray's "wrongful act" occurred "wholly after" that

26

retroactive date. An interpretation of the amendatory endorsement, specifically the term "immediately preceded," will determine the retroactive date. Ennie argues that the retroactive date must be determined by considering only paragraph 1.a of the amendatory endorsement, and, as such, the retroactive date must be the retroactive date "which immediately preceded the first policy American Automobile Insurance Company issued to the Agent." App. 90. Ennie contends that the policy which "immediately preceded" the first AAIC policy beginning January 1, 2006 was the policy issued by USLIC covering the period of November 24, 2004 through November 24, 2005 because that policy was the last in time. Hence, Ennie maintains that the retroactive date of that policy, November 24, 2004, also governs the AAIC policy. In the alternative, Ennie contends that if "immediately preceded" is open to two different interpretations, then we must construe the term against the insurer and conclude that "immediately preceded" means "next in line."

Ennie also dismisses paragraph 1.b of the amendatory endorsement, maintaining that its language and lapse provisions are not applicable to Murray. Paragraph 1.b applies only "if the agent was added after the inception date of the first American Automobile Insurance Company policy." App. 90. Ennie argues that Murray was an insured under the first AAIC policy from its inception. Importantly, Ennie notes that paragraph 1.b is the only section referencing lapses in coverage, and it therefore contends that such lapses are only relevant where there has been a lapse between two AAIC polices. Ennie thus argues that paragraph 1.b is inapplicable because Murray was insured under the first

27

AAIC policy since inception, and there were no lapses in AAIC coverage because the two policies were continuous.

AAIC argues that paragraph 1.a of the amendatory endorsement supports a retroactive date of January 1, 2006. Under paragraph 1.a, AAIC proposes that the definition of "immediately" is "without interval of time, without delay, straightaway, or without any delay or lapse of time." AAIC Br. 19-20 (quoting Black's Law Dictionary 750 (6th ed. 1990)). As such, AAIC contends that there was no policy that "immediately preceded" the first AAIC policy since there was a delay and lapse of time between Murray's coverage with USLIC and AAIC. According to paragraph 1.a, therefore, Murray's retroactive date would be the first effective date of coverage for his AAIC policy, January 1, 2006. AAIC contends that this is the only logical interpretation that could have been contemplated by the parties, as the alternative would provide Murray coverage despite large gaps in time. For example, taking Ennie's argument to its extreme, AAIC notes that:

> if Murray were uninsured for a long period of time and, for instance, his most recent previous policy was in effect from November 24, 1975 to November 24, 1976, and he had a thirty year gap in coverage . . . he would have a November 1975 retroactive date under the AAIC policy.

AAIC Br. 20.

The District Court, in determining the retroactive date, aptly pointed out that AAIC's policy was poorly drafted, specifically citing two drafting errors in the amendatory endorsement. Importantly, the District Court correctly assumed that the introductory language of the amendatory endorsement – "The Retroactive Date means the earlier of;" – mistakenly utilized a semicolon instead of a colon. App. 20. After assuming a colon was intended in order to allow the amendatory endorsement to make sense, the District Court noted that examining the language of paragraph 1.a in isolation would reasonably support Ennie's policy interpretation of the term "immediately" meaning "next in line." Id. However, because Pennsylvania law dictates that the endorsement be read as a whole, the District Court concluded that the indentation of the lapse language in paragraph 1.b was also erroneous because restricting the lapse provision to paragraph 1.b would mean it "would never apply because the analysis would end after paragraph 1.a, which under [Ennie's] interpretation . . . ignores any gap in coverage without regard to the extent of its duration." App. 21. The District Court noted that not applying the lapse language to paragraph 1.a renders it superfluous and creates absurd results, and then determined that the only reasonable interpretation of the endorsement as a whole "is to give effect to the lapse provision in all instances of lapse in coverage." Id. This interpretation dictates, in light of Murray's lapse in coverage, a retroactive date of January 1, 2006, the inception date of the AAIC policy.

We agree with the thorough and thoughtful analysis by the District Court regarding the retroactive date. Pennsylvania law dictates that we read the policy language regarding the retroactive date as a whole in the context of the

entire amendment and we must attempt to give effect to all of its provisions. In doing this, it is clear that the lapse provisions must be applicable to both paragraphs of the endorsement in order to give logical meaning to paragraph 1.a and the lapse provisions themselves. This interpretation also protects the purpose of claims made policies and retroactive dates, which are meant to limit an insurer's coverage, and avoids the absurd result of giving effect to dates decades in the past.

Applying the lapse provision to paragraph 1.a, we are not persuaded that the term "immediately preceded" is an ambiguous term. While it is true that this Court is bound to construe any ambiguities in insurance contracts in favor of the insured, reading "immediately preceded" in light of the lapse provision removes any ambiguity about the term, as the date of retroactivity in the policy that "immediately preceded" the AAIC policy is only relevant if the insured has maintained continuous insurance coverage. Since Murray allowed his coverage to lapse, the retroactive date is the inception date of the first AAIC policy issued – January 1, 2006.[7] We

---

[7] We note that AAIC also maintains that paragraph 1.a is inapplicable to Murray and, therefore, that paragraph 1.b governs this situation. Paragraph 1.a provides that the retroactive date is the date shown on the Agent's policy "[w]hich immediately preceded the first policy [AAIC] issued to **Agent** . . . ." App. 90 (emphasis added). As AAIC points out, it never issued a policy to Murray. Rather, it issued the relevant policy to the The Agents of Infinity Property Casualty Corp. Murray was first added to the AAIC policy on January 1, 2006, when he signed a contract with The Agents of Infinity, as contemplated by paragraph 1.b. See

30

therefore agree with the District Court's interpretation of the retroactive date and conclude that the policy language is not ambiguous.

## B.

For coverage under the AAIC policy, both the claim and wrongful act by Murray must have occurred "wholly after" the retroactive date of January 1, 2006. Since it is not disputed that the claim occurred after the retroactive date, the determination of coverage will depend solely on the characterization and timing of the wrongful act. The policy defines "wrongful act" as "[a]ny actual or alleged negligent act, error or omission, or negligent misstatement or misleading statement . . . ." App. 69. Ennie maintains that Murray's only wrongful act was failing to advise and provide liquor liability insurance to Ennie on the specific date of the

---

App. 90 (providing that the retroactive date is the date shown on the Agent's policy "[w]hich immediately preceded the date the **Agent** was first added to the [AAIC] Policy, if the **Agent** was added after the inception date of the first [AAIC] Policy, provided that there is no lapse in coverage . . .") (emphasis added). Thus, AAIC argues, we need not reconcile paragraphs 1.a and 1.b, as paragraph 1.a is inapplicable and paragraph 1.b clearly indicates a retroactive date of January 1, 2006.

We need not address this argument, however, because as we explain above, we are persuaded that paragraph 1.a supports a determination that the retroactive date is January 1, 2006.

accident, March 21, 2006. Ennie argues that any negligence attributable to Murray before that time did not result in any harm and, therefore, did not give rise to any claims for which coverage is sought under the AAIC policy. Ennie relies on case law regarding negligence causes of action and occurrence insurance policies, which requires, as in all negligence claims, proof of damages.[8] In the alternative, Ennie also argues that Murray met with a representative of Ennie to discuss its insurance coverage after January 1, 2006. Ennie contends that Murray's wrongful act occurred during this meeting where Murray failed to advise him of his need for liquor liability coverage.

AAIC maintains that Murray's wrongful act occurred in the fall of 2002 when he failed to provide liquor liability coverage and continued at each policy renewal through the last renewal in December 2005. AAIC concedes that Murray met with Ennie regarding its policy in 2006, but argues that this meeting was the continuation of Murray's wrongful act that had already occurred.

Like the District Court, we are not persuaded by Ennie's argument that the wrongful act occurred on the

---

[8] A claims made policy protects the policy holder against claims made during the life of a policy. In comparison, an occurrence policy protects a policy holder against occurrences that happen during the policy period and for which claims may arise later. See Twp. of Ctr. v. First Mercury Syndicate, 117 F.3d 115, 118 (3d Cir. 1997). Here, Ennie urges the Court to equate the definition of an "occurrence" under occurrence polices to that of a "wrongful act" or "negligent act" under AAIC's policy.

specific date of the accident. Ennie's reliance on case law regarding insurance coverage disputes that result in lawsuits of negligence is misplaced. Here, we are not reviewing a cause of action for negligence, but are tasked with interpreting the policy's language. The policy defines "wrongful act" as "[a]ny actual or alleged negligent act, error or omission, or negligent misstatement or misleading statement." App. 69. As "negligent act" is not defined in the policy, we are instructed to give the term its natural meaning: "an act that creates an unreasonable risk of harm to another." Black's Law Dictionary 26 (8th ed. 2004). Hence, the plain meaning of "negligent act" does not necessitate proof of damages, but only a showing that Murray has acted so as to expose Ennie to an unreasonable risk of harm.

Ennie's reliance on case law regarding occurrence insurance policies is similarly misplaced. There is no need to borrow from the definition of "occurrence" under occurrence policies when the plain meaning of the term "negligent act" adequately defines "wrongful act." Moreover, as the District Court noted, the definition for an "occurrence" suggests that the negligent act and resulting damage could occur at different times and that a negligent act is not dependent on when the injury occurs. See D'Auria v. Zurich Ins. Co., 507 A.2d 857, 861 (Pa. Super. Ct. 1986) (noting that an "occurrence" "happens when the injurious effects of the negligent act first manifest themselves in a way that would put a reasonable person on notice of injury"). Therefore, we reject Ennie's interpretation of the term "wrongful act."

We conclude that the "wrongful act" occurred when Murray failed to exercise the proper degree of care in placing insurance for Ennie and exposed it to an unreasonable risk of

33

harm. The record indicates that Ennie, through Poeng, first contacted Murray for insurance in 2000, and that Murray began placing coverage for Ennie in the fall of 2002. By 2005, Ennie was operating as a beer distributor when Murray renewed his policy that was in effect on the date of the accident, March 24, 2006. From 2002 until the date of the accident, Murray never alleged that he attempted or recommended to place liquor liability coverage for Ennie. Considering these facts, Murray created an "unreasonable risk of harm" to Ennie at the earliest in the fall of 2002 and at the latest during the last policy renewal in December 2005. Any meeting between Poeng and Murray that occurred in 2006 regarding insurance coverage was a continuation of Murray's wrongful act of failing to provide the proper coverage. As such, Murray's wrongful acts did not occur "wholly after" the retroactive date of January 1, 2006. Therefore, we hold that Murray is not covered under the AAIC policy, and that the District Court did not err in granting summary judgment to AAIC.

## IV.

For the foregoing reasons, we will affirm the judgment of the District Court.