PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 24-1102
_____

TWIN CITY FIRE INSURANCE CO.

v.

GLENN O. HAWBAKER, INC.; DANIEL HAWBAKER;
PATRICK HAWBAKER; D. MICHAEL HAWBAKER,
                              Appellants
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
District Court No. 4:22-cv-01485
Chief District Judge:  Honorable Matthew W. Brann
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 20, 2024

Before:  RESTREPO, McKEE, and SMITH, *Circuit Judges*

(Filed: October 3, 2024)

Lauren Anthony
Jonathan H. Rudd
McNees Wallace & Nurick
100 Pine Street
P.O. Box 1166
Harrisburg, PA 17101
    *Counsel for Appellants*

Robert L. Ebby
Ronald P. Schiller
Hangley Aronchick Segal Pudlin & Schiller
One Logan Square
18th & Cherry Streets, 27th Floor
Philadelphia, PA 19103
    *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

SMITH, *Circuit Judge*.


Over the course of several years, Glenn O. Hawbaker, Inc. ("GOH"), carried out an unlawful scheme that involved, inter alia, underpaying some of its employees. When two class-action lawsuits against GOH followed, the company sought coverage under an insurance policy that it held with Twin City Fire Insurance Company ("Twin City"). But Twin City denied coverage and initiated this case, asking the District

2

Court to declare that Twin City did not have a duty to provide coverage. GOH and its Board of Directors (collectively referred to as "Appellants") responded by raising counterclaims that alleged a breach of contract and asked the District Court to declare that certain claims in those class actions were indeed covered under the policy.

In August 2023, the District Court granted Twin City's motion to dismiss Appellants' counterclaims. And in December 2023, the District Court granted Twin City's motion for judgment on the pleadings with respect to its request for a declaratory judgment. In reaching those decisions, the District Court concluded that the claims in question were not covered under the policy because they fell within a policy exclusion that applies to claims that are "based upon, aris[e] from, or [are] in any way related to any . . . Wage and Hour Violation." App. at 105A (boldface type omitted). Appellants challenge both of those decisions in this appeal. For the reasons that follow, the District Court correctly concluded that the claims in question are not covered under the policy. Accordingly, we will affirm the District Court's judgment.

I.      **Background**

GOH is a Pennsylvania corporation whose work includes construction and paving for "both private and public sector customers."[1] Many of GOH's jobs have been public-works projects that are governed by the Pennsylvania Prevailing Wage Act ("PWA"), 43 Pa. Stat. §§ 165-1–165-17,

---

[1] Glenn O. Hawbaker, Inc., https://www.goh-inc.com (last visited Oct. 2, 2024).

3

and/or the Davis-Bacon Act ("DBA"), 40 U.S.C. §§ 3141-48. "A contract is subject to the [PWA] if it is for a public[-]work[s] project in excess of $25,000." W. Chester Univ. of Pa. v. Browne, 71 A.3d 1064, 1068 (Pa. Commw. Ct. 2013). The DBA, meanwhile, applies to a public-works project where the amount of federal funding is greater than $2,000. 40 U.S.C. § 3142(a); United States ex rel. Int'l Bhd. of Elec. Workers Loc. Union No. 98 v. Fairfield Co., 5 F.4th 315, 323 n.1 (3d Cir. 2021) [hereinafter IBEW Loc. No. 98]. These statutes require a company awarded a qualifying public-works contract to pay a prevailing minimum wage ("prevailing wage") to its employees for their work on that project. See Commonwealth v. Goodco Mech., Inc., 291 A.3d 378, 387 (Pa. Super. Ct. 2023) (discussing the PWA); IBEW Loc. No. 98, 5 F.4th at 323 (discussing the DBA).[2] The prevailing wage comprises (1) an hourly base rate of pay, and (2) fringe benefits, which can include, inter alia, employer contributions to the employees' pension or health-insurance fund. See W. Chester Univ. of Pa., 71 A.3d at 1068-69 (discussing the PWA); Amaya v. Power Design, Inc., 833 F.3d 440, 443 & n.3 (4th Cir. 2016) (discussing the DBA).

---

[2] The prevailing-wage rates vary by locality and are set by Pennsylvania's Department of Labor and Industry (in the case of the PWA), Goodco Mech., Inc., 291 A.3d at 387, or the federal Department of Labor (in the case of the DBA), IBEW Loc. No. 98, 5 F.4th at 323.

4

## A. GOH's unlawful scheme and the class-action lawsuits that followed

In 2021, "the Pennsylvania Office of Attorney General (OAG) filed a criminal complaint against [GOH], charging [GOH] with four counts of theft by failure to make required disposition of funds received in violation of [18 Pa. Cons. Stat. Ann. § 3927(a)]." Glenn O. Hawbaker, Inc. v. Dep't of Transp., 304 A.3d 1067, 1070 (Pa. 2023). Those charges stemmed from allegations that, from 2015 to 2018, GOH repeatedly violated the PWA and DBA by misappropriating about $20.7 million in fringe-benefit payments owed to its prevailing-wage employees. A few months after the criminal complaint issued, GOH and the OAG entered into a written plea agreement. As part of that agreement, GOH agreed to plead no contest to the four charges and pay about $20.7 million in restitution to the victims.

Not surprisingly, in the months after the OAG brought the criminal charges against GOH, two follow-on, class-action complaints were filed by victims of GOH's misappropriation. The class-action complaint filed first in time was King v. Glenn O. Hawbaker, Inc., brought in the Court of Common Pleas for Centre County, Pennsylvania. It named only GOH as a defendant. Next came Packer v. Glenn O. Hawbaker, Inc., filed in the U.S. District Court for the Middle District of Pennsylvania. In this case, the putative class named not only GOH, but also GOH's Board of Directors and the Plan Administrator of GOH's retirement plan.

The two class-action complaints included lengthy, substantially similar background sections detailing GOH's

5

scheme to misappropriate its prevailing-wage employees' fringe benefits. As a general matter, that scheme had two components. First, "[i]nstead of putting all of the prevailing wage workers' retirement benefit funds into the account[s] of the worker[s] who actually earned [them], GOH stole that money and used it to pay for *all* GOH's employees', executives', and owners' retirement benefits." App. at 244A (King complaint) (emphasis added); see id. at 292A (Packer complaint). GOH did so by putting "that money into one big, unallocated account," and then, "[j]ust prior to the end of the first quarter of the following year, . . . spread[ing] out [that money] across all GOH employees', executives', and owners' retirement accounts." Id. at 243A, 291A. Second, GOH paid only a fraction of the required amount of health and welfare benefits to its prevailing-wage employees, "stealing the rest to pay for the health and welfare benefits of . . . [its] non-prevailing[-]wage employees and executives." Id. at 245A, 292A. It is further alleged that GOH hid its underfunding of prevailing-wage employees' health and welfare benefits "by reporting to government agencies that it was paying well in excess of what was required by law, using an hourly health and welfare figure that was based on grossly inflated costs and nonqualifying expenses." Id. at 245A, 292A-93A.

Based on GOH's scheme, the King complaint raised the following claims: (1) breach of contract for not timely paying its prevailing-wage employees all the wages and benefits they had earned; (2) breach of contract for misappropriating retirement accounts; and (3) violating Pennsylvania's Wage

6

Payment and Collection Law, 43 Pa. Stat. §§ 260.1–260.13.[3] The breach-of-contract claim for misappropriating retirement accounts was undergirded by an allegation that GOH's failure to timely deposit the correct amount into the accounts of its prevailing-wage employees "deprived and continues to deprive [them] of interest, earnings and investment returns that otherwise would have been received in the absence of [GOH's] scheme and breach of contract." App. at 258A-59A.

As for the Packer complaint, that pleading raised the following claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461: (1) GOH and the Plan Administrator breached their fiduciary duties by, inter alia, making untimely and incorrect contributions to the prevailing-wage employees' 401(k)

---

[3] As the District Court noted, the King complaint also raised, in the alternative, "quasi-contractual claims for restitution and unjust enrichment." Twin City Fire Ins. Co. v. Glenn O. Hawbaker, Inc., No. 4:22-cv-01485, 2023 WL 5652011, at *2 n.15 (M.D. Pa. Aug. 31, 2023); see Khawaja v. RE/MAX Cent., 151 A.3d 626, 633 (Pa. Super. Ct. 2016) ("A claim sounding in breach of contract may be pleaded alternatively with a claim of unjust enrichment if the claims are raised in separate counts of a complaint."); see also Wilson Area Sch. Dist. v. Skepton, 895 A.2d 1250, 1254 (Pa. 2006) ("[T]he doctrine of unjust enrichment contemplates that '[a] person who has been unjustly enriched at the expense of another must make restitution to the other.'" (second alteration in original) (quoting Binns v. First Nat'l Bank of Cal., Pa., 80 A.2d 768, 775 (Pa. 1951))).

7

accounts; and (2) GOH and the Board of Directors breached their fiduciary duties by not monitoring the Plan Administrator to ensure that the Plan Administrator was adequately performing its duties.

### B.    GOH's insurance policy with Twin City

Faced with the two class-action lawsuits, GOH sought coverage under an insurance policy ("the Policy") that it held with Twin City.  As discussed below, the relevant provisions of the Policy are set forth in two sections — (1) the "Common Terms and Conditions" ("CTC") that generally apply under the Policy, and (2) the pertinent coverage section, titled "Fiduciary Liability Coverage Part" ("FLC").

Under the CTC, Twin City generally bears the "duty to defend Claims covered under the Policy, even if such Claim[s] [are] groundless, false or fraudulent."  App. at 86A (boldface type omitted).  However, that duty is not triggered with respect to claims that "involve allegations, in whole or in part, of a Wage and Hour Violation."  Id. (boldface type omitted).  The Policy defines "Wage and Hour Violation" as

> any actual or alleged violation of the duties and responsibilities that are imposed upon an Insured by any federal, state or local law or regulation anywhere in the world, including but not limited to the Fair Labor Standards Act ["FLSA"] or any similar law (except the Equal Pay Act), which govern wage, hour and payroll practices.  Such practices include but are not limited to: (1) the calculation and payment of wages, overtime

8

wages, minimum wages and prevailing wage rates; (2) the calculation and payment[] of benefits; (3) the classification of any person or organization for wage and hour purposes; (4) reimbursing business expenses; (5) the use of child labor; or (6) garnishments, withholdings and other deductions from wages.

Id. at 83A-84A (boldface type omitted).

Under the FLC, "[t]he Insurer shall pay Loss on behalf of the Insureds resulting from a Fiduciary Claim first made against the Insureds . . . for a Wrongful Act by the Insureds or by any person for whose Wrongful Acts the Insureds are legally responsible." Id. at 101A (boldface type omitted).[4]

---

[4] "Insureds" include any "Insured Entity," "Insured Person," or "Insured Plan." App. at 104A (boldface type omitted). "Insured Person" means any "Manager," "Employee," or "natural person who was, is or shall become trustee of an Insured Plan, or the member of any committee which oversees the administration or investments of an Insured Plan, while in such person's capacity as a trustee or committee member." Id. at 103A (boldface type omitted). "Wrongful Act" is defined, in pertinent part, as "any actual or alleged":

(1) error, misstatement, misleading statement, act, omission, neglect or breach of duty constituting a violation of any responsibilities, obligations or duties imposed upon fiduciaries of an Insured Plan by ERISA or any similar law;

9

However, certain situations are specifically excluded from that coverage provision. One of those situations is when the Loss is "in connection with any Claim *based upon, arising from, or in any way related to* any . . . Wage and Hour Violation." Id. at 105A (emphasis added and boldface type omitted). Under the Policy, "Loss means Defense Costs and Damages." Id. at 82A (boldface type omitted).

## C.     The District Court proceedings

GOH, contending the Policy covered the two class-action lawsuits, asked Twin City to fulfill its duty to defend. Twin City refused, denied coverage, and then initiated a lawsuit in the District Court against Appellants (GOH and its Board of Directors). Twin City's amended complaint, which is the operative pleading here, sought a declaratory judgment that "Twin City does not have a duty to provide any coverage, including any defense, in connection with the [two class actions in question]." Id. at 72A. Appellants' answer to that pleading included counterclaims, which alleged a breach of contract and asked the District Court to declare "that there are claims asserted in the King Class Action and/or the Packer

---

. . . (4) error, misstatement, misleading statement, act, omission, neglect or breach of duty . . . in the administration of an Insured Plan; . . . or (6) matter claimed against an Insured due to such Insured acting in the capacity of a fiduciary of an Insured Plan.

Id. at 104A-05A (boldface type omitted).

10

Class Action against [Appellants] that are covered pursuant to the terms of the . . . Policy." Id. at 357A.

### 1. District Court's August 2023 decision dismissing Appellants' counterclaims

Twin City moved to dismiss Appellants' counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6). Appellants opposed that motion, arguing that neither Count 2 in the King complaint (the breach-of-contract claim for misappropriating retirement accounts), nor the two ERISA counts in the Packer complaint fell within the Policy's exclusions pertaining to Wage and Hour Violations.[5] The District Court subsequently held oral argument on Twin City's motion. Thereafter, in August 2023, the District Court issued a thorough 31-page opinion and an accompanying order granting that motion.

As mentioned earlier, Twin City does not have a duty to defend *covered* claims if they "involve allegations, in whole or in part, of a Wage and Hour Violation." Id. at 86A (boldface type omitted). Furthermore, a claim is not covered — that is, Twin City does not have a duty to pay "Loss" (defense costs and damages) — if that claim is "*based upon, aris[es] from, or [is] in any way related to* any . . . Wage and Hour Violation."

---

[5] GOH acknowledged that Counts 1 and 3 in the King complaint "involve claims for wage and hour violations." App. at 383A. Although the King complaint was not brought against GOH's Board of Directors, they, too, acknowledged that this complaint "does include claims for wages." Id. at 429A.

11

Id. at 105A (emphasis added and boldface type omitted). Although the District Court determined that a violation of ERISA "or any similar law" does not fall within the definition of "Wage and Hour Violation," see Twin City Fire Ins. Co. v. Glenn O. Hawbaker, Inc., No. 4:22-cv-01485, 2023 WL 5652011, at *8 (M.D. Pa. Aug. 31, 2023) [hereinafter Twin City I], that court concluded that the two Packer claims and Count 2 of the King complaint (collectively referred to as "the Disputed Claims") are not covered claims because they "*arise* out of other violations that are unambiguously Wage and Hour Violations, such as the failure to pay wages," id. at *12; see id. at *10 (stating that "Pennsylvania law is well settled that 'arising out of' requires [only] 'but for' causation").

### 2. District Court's December 2023 decision granting judgment on the pleadings in favor of Twin City

After the District Court issued its August 2023 decision, Twin City moved for judgment on the pleadings with respect to its declaratory-judgment claim. Appellants opposed that motion and moved for reconsideration of the District Court's August 2023 decision. In December 2023, the District Court granted Twin City's motion, denied Appellants' reconsideration motion as moot,[6] and directed the District

---

[6] The District Court noted Appellants' acknowledgement "that, '[s]hould th[at] Court reject all of GOH's arguments opposing the motion for judgment on the pleadings and enter judgment in favor of Twin City on Twin City's affirmative claims . . . there would be nothing for the Court to reconsider.'" Twin City Fire Ins. Co. v. Glenn O. Hawbaker, Inc., No. 4:22-cv-

12

Court Clerk to close the case.  In doing so, the District Court rejected Appellants' argument "that there are claims for which they seek coverage that are not related to the alleged scheme to underpay prevailing[-]wage employees."  Twin City Fire Ins. Co. v. Glenn O. Hawbaker, Inc., No. 4:22-cv-01485, 2023 WL 8791175, at *2 (M.D. Pa. Dec. 19, 2023) [hereinafter Twin City II]; see id. at *3.

Appellants then timely filed this appeal, seeking review of the District Court's August 2023 and December 2023 decisions.

## II.    Jurisdiction and Standard of Review

The District Court had diversity jurisdiction over this case, see 28 U.S.C. § 1332(a)(1),[7] and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

A motion for judgment on the pleadings is analyzed under the same standard as a motion to dismiss filed pursuant

---

01485, 2023 WL 8791175, at *4 n.38 (M.D. Pa. Dec. 19, 2023) (first alteration and ellipsis in original) (quoting Appellants' reply in support of their motion for reconsideration).

[7] There is complete diversity amongst the parties (Twin City is a citizen of Connecticut and Indiana, and none of Appellants is a citizen of either of those states), and the matter in controversy is greater than $75,000.  Although Appellants assert that the District Court also had jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, they are mistaken.  See Allen v. DeBello, 861 F.3d 433, 444 (3d Cir. 2017) ("The

13

to Rule 12(b)(6).  Vitamin Energy, LLC v. Evanston Ins. Co., 22 F.4th 386, 392 n.6 (3d Cir. 2022).  In reviewing either motion, a district court must accept as true the well-pleaded allegations in the pleading of the non-moving party and draw all reasonable inferences in that party's favor.  See Zimmerman v. Corbett, 873 F.3d 414, 417-18 (3d Cir. 2017) (addressing a motion for judgment on the pleadings); McTernan v. City of York, 577 F.3d 521, 526 (3d Cir. 2009) (addressing a motion to dismiss).  "We exercise plenary review over rulings on motions to dismiss, and over rulings on motions for judgments on the pleadings."  In re Majestic Star Casino, LLC, 716 F.3d 736, 747 (3d Cir. 2013) (citations omitted).[8]

---

Declaratory Judgment Act does not . . . provide an independent basis for subject-matter jurisdiction; it merely defines a remedy.").

[8] The District Court's denial of Appellants' motion to reconsider the dismissal of their counterclaims is mentioned only in passing in Appellants' opening brief.  As a result, we deem any challenge to that ruling forfeited.  See Geness v. Cox, 902 F.3d 344, 355 (3d Cir. 2018) ("[I]t is 'well settled that a passing reference to an issue will not suffice to bring that issue before this court.'" (quoting Kach v. Hose, 589 F.3d 626, 642 (3d Cir. 2009))).  But even if we were to determine that they have indeed preserved a challenge to that ruling, we would conclude that they have not demonstrated that reconsideration was warranted.  See generally Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir. 2010) (per curiam) (indicating that a motion for reconsideration has merit only if the movant shows that

14

## III.  Discussion

### A.  Standards for determining whether an insurance claim is covered

The District Court stated, and the parties agree, that Pennsylvania's substantive law governs in this diversity action.[9]  Under Pennsylvania law, "[a] court's first step in a declaratory judgment action concerning insurance coverage is to determine the scope of the policy's coverage."  Gen. Accident Ins. Co. of Am. v. Allen, 692 A.2d 1089, 1095 (Pa. 1997) [hereinafter Allen].  In making that determination, "[t]he

---

(1) there has been "an intervening change in controlling law," (2) there is new evidence that bears on the district court's underlying decision, or (3) there is a "need to correct clear error of law or prevent manifest injustice").  In view of all this, we need not address Twin City's argument that Appellants' motion for reconsideration was untimely.

[9] We see no reason for another state's law to apply.  The Policy does not contain a choice-of-law provision, and there is nothing in Pennsylvania's choice-of-law principles that points to applying another state's substantive law in this case.  See McDonald v. Whitewater Challengers, Inc., 116 A.3d 99, 106-07 (Pa. Super. Ct. 2015) (discussing Pennsylvania's choice-of-law framework in contract cases); see also SodexoMAGIC, LLC v. Drexel Univ., 24 F.4th 183, 204 (3d Cir. 2022) ("In exercising diversity jurisdiction, a federal court employs the choice-of-law principles of its forum state to determine which substantive law governs . . . .").

policy must be read as a whole and construed in accordance with the plain meaning of terms." Am. Auto. Ins. Co. v. Murray, 658 F.3d 311, 320 (3d Cir. 2011) (applying Pennsylvania law). "[I]f possible, a court should interpret the policy so as to avoid ambiguities and give effect to all of its provisions." Id. at 321 (quoting Med. Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999)). That said, "if the contract's [provisions] are reasonably susceptible to more than one interpretation, then they must be regarded as ambiguous." Id. An ambiguous provision "must be construed against the insurer and in favor of the insured." Id. (quoting Med. Protective Co., 198 F.3d at 104).

Once a court determines the scope of coverage, it then "examine[s] the complaint in the underlying action to ascertain if it triggers coverage." Allen, 692 A.2d at 1095. "Whether a claim is 'potentially covered is answered by comparing the four corners of the insurance contract to the four corners of the complaint.'" Erie Ins. Exch. v. Moore, 228 A.3d 258, 265 (Pa. 2020) (quoting Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc., 2 A.3d 526, 541 (Pa. 2010)). "[I]f any doubt or ambiguity exists, it must be resolved in favor of coverage." Id.

## B. The District Court correctly concluded that the Disputed Claims are not covered under the Policy

Recall that the CTC defines "Wage and Hour Violation" as "any actual or alleged violation of the duties and responsibilities that are imposed upon an Insured by any federal, state or local law or regulation . . . , including but not limited to the [FLSA] or any similar law (except the Equal Pay

16

Act), which govern wage, hour and payroll practices." App. at 83A (boldface type omitted). Although such "practices" are defined to include, inter alia, "the calculation and payment[] of benefits," id. at 84A, that part of the definition seems to be in tension with the FLC, which generally covers violations of ERISA — a statute that established a regulatory scheme governing employee benefits, see Estate of Kensinger v. URL Pharma, Inc., 674 F.3d 131, 135 (3d Cir. 2012).

The District Court recognized this tension, see Twin City I, 2023 WL 5652011, at *12 (agreeing with Appellants "that the definition of Wage and Hour Violation conflicts with the Policy's Fiduciary Liability coverage"), and it determined that the definition of "Wage and Hour Violation" does *not* include "alleged violations of ERISA or any similar law," id. at *8. In doing so, the District Court did not explicitly state that it was construing an ambiguous provision in favor of the insured. However, it appears that the District Court was indeed construing the definition of Wage and Hour Violation in that manner. Neither Appellants nor Twin City objects to that construction on appeal, and we see no reason to interpret the Policy differently.

Because (1) the definition of Wage and Hour Violation does not include violations of ERISA or a similar law, and (2) the Disputed Claims alleged violations of ERISA or a similar law, the CTC's Wage-and-Hour-Violation exception to Twin City's duty to defend does not apply to those claims. But that does not end the matter. For Twin City's duty to defend to be triggered, the claims in question must be covered under the Policy. And whether those claims are covered is determined by looking to the FLC, which provides coverage

17

for "Fiduciary Claims," see App. at 102A-03A (defining that term), so long as those claims are not "based upon, aris[e] from, or [are] in any way related to any . . . Wage and Hour Violation," id. at 105A (boldface type omitted). The pivotal question we confront, then, is whether the Disputed Claims are based upon, arise from, or are in any way related to a Wage and Hour Violation.

Both the Packer and King complaints detailed at length GOH's scheme to underpay its prevailing-wage employees by, in essence, distributing the fringe-benefit portion of their prevailing wages to *all* GOH employees. These allegations of wage underpayment undergird Counts 1 and 3 of the King complaint (hereinafter "the King Wage Claims"),[10] and Appellants have conceded that those two counts "involve claims for wage and hour violations." Id. at 383A; see Appellants' Opening Br. 24; Appellants' Reply Br. 12. Nevertheless, Appellants have argued that the King Wage Claims are entirely separate from the Disputed Claims, for the latter "go[] to the 'timing' of the contribution made to the employees' individual retirement accounts." App. at 462A. The District Court rejected this argument, stating that "[t]he

---

[10] See App. at 257A (alleging that GOH "breached its contract with Plaintiff and the Class by not paying them timely for all wages and fringe benefits earned, owed and promised on jobs covered by the PWA or the DBA") (Count 1); id. at 261A (alleging that GOH violated Pennsylvania's Wage Payment and Collection Law by "willfully fail[ing] to pay timely all wages and fringe benefits earned by and owed to Plaintiff and the Class") (Count 3).

18

Underlying Class Actions do not allege separate schemes of untimely payments in which one is entirely unrelated to the alleged scheme of underpayments." Twin City II, 2023 WL 8791175, at *3; see id. ("[T]he scheme of untimely benefits payments was part and parcel of the scheme to underpay employees.").

We agree with the District Court. The language "based upon, arising from, or in any way related to" is sweeping in scope; the phrase "arising from" requires only but-for causation (not proximate causation),[11] and the phrase "in any way related to" seems to permit an even looser connection between a claim and a Wage and Hour Violation. See USA Gymnastics v. Liberty Ins. Underwriters, Inc., 27 F.4th 499, 524 (7th Cir. 2022) (per curiam) (stating that the phrase "'in any way related to' cannot be limited to just causal relationships in [the] policy"); see also HR Acquisition I Corp.

---

[11] "The phrase 'arising *out of*,' when used in a Pennsylvania insurance exclusion, unambiguously requires 'but for' causation." Gen. Refractories Co. v. First State Ins. Co., 855 F.3d 152, 155 (3d Cir. 2017) (emphasis added); see id. at 159-60 (collecting cases from the Pennsylvania state courts). Although the exclusion here uses the phrase "arising *from*," neither the District Court nor any of the parties have taken the position that the two phrases are distinguishable, and we see no semantic reason to distinguish them. See Spirtas Co. v. Fed. Ins. Co., 521 F.3d 833, 836 (8th Cir. 2008) ("[I]n the insurance context[,] courts appear to be unanimous in interpreting the phrase 'arising out of' synonymously with the term 'arising from' . . . ." (collecting cases)).

19

v. Twin City Fire Ins. Co., 547 F.3d 1309, 1316 (11th Cir. 2008) (indicating that the phrase "in any way related to" sets a "low standard"). GOH's alleged scheme involved funneling retirement funds owed to prevailing-wage employees into "one big, unallocated account," App. at 243A, 291A, and then later, in an untimely fashion, distributing those funds to all GOH employees. We cannot conclude that the first part of that scheme (the underpayment of GOH's prevailing-wage employees' wages) was unrelated to the second part (the untimely disbursement of funds to all GOH employees).

## C. Appellants' various arguments attacking the District Court's judgment are unpersuasive

Appellants, in support of their argument that the Disputed Claims are entirely separate from a Wage and Hour Violation, point to "significant differences in legal theories," Appellants' Opening Br. 23; see, e.g., id. at 24 (attempting to distinguish the Disputed Claims by describing them as "classic fiduciary liability claims"), and stress that the Disputed Claims are not seeking (and cannot seek) to recover lost wages. But these points do not control the analysis; rather, what matters is whether the *factual* allegations undergirding the Disputed Claims are in some way related to an alleged Wage and Hour Violation. See Mut. Benefit Ins. Co. v. Haver, 725 A.2d 743, 745 (Pa. 1999) ("[T]he particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered. Instead[,] it is necessary to look at the factual allegations contained in the complaint."). Appellants also emphasize that some of the class members were *overpaid* (to the extent that those employees' claims hinged on the timing, rather than the amount, of the retirement

20

disbursements). But that distinction does not control either. As the District Court explained in its opinion granting Twin City's motion for judgment on the pleadings, "the scheme of untimely benefits payments was part and parcel of the scheme to underpay employees. That the scheme may have impacted certain individuals differently, or perhaps even benefited certain individuals, is not relevant to the inquiry." Twin City II, 2023 WL 8791175, at *3. We have found no authority that contradicts that reasoning.

Although Appellants cite two cases in support of their position that the Disputed Claims should be treated separately from any Wage and Hour Violation, neither is on point. In one case, Perdue Farms, Inc. v. Travelers Cas. & Sur. Co. of Am., 448 F.3d 252 (4th Cir. 2006), the district court determined that the insurer had a duty to indemnify the insured for both covered claims (ERISA claims) and non-covered claims (wage and hour claims) because the latter were "reasonably related" to the former. Id. at 259. The Fourth Circuit reversed, but it did so having concluded that Maryland law's "reasonably related" rule did not apply in the indemnification context. Id. at 260-61. Accordingly, while Perdue Farms might show, as a general matter, "that it is possible to separate non-covered wage and hour claims from covered fiduciary liability claims," Appellants' Opening Br. 37, that decision does not bear on the pertinent question here: whether, under the Policy's exclusion provision, the Disputed Claims are "in any way related to" a Wage and Hour Violation.

The other case cited by Appellants is Dobson v. Twin City Fire Ins. Co., 590 F. App'x 687 (9th Cir. 2015) (per curiam). There, in a short, non-precedential opinion, the Ninth

21

Circuit concluded that a breach-of-fiduciary-duty claim was covered under the insurance policy in question, while certain other claims were not. Id. at 688. Although Appellants argue that Dobson supports "the general idea that it is possible to separate covered fiduciary claims from other, non-covered claims in underlying actions when making a coverage determination," Appellants' Opening Br. 38, it contains no analysis that might bear on the critical question of whether the Disputed Claims are "in any way related to" a Wage and Hour Violation.

Appellants also attack the District Court's application of the Policy's "in any way related to" language, arguing that "the District Court endorsed a relatedness inquiry with . . . the potential for virtually any claim in any suit to be deemed related to another." Id. at 34; see id. at 48 ("[T]he District Court interpreted the Policy in such a way that the Wage and Hour Violation exclusion effectively swallows the affirmative grant of coverage for ERISA claims as set forth in the [FLC] . . . ."). But nothing in the District Court's analysis suggests that it endorsed such an all-encompassing relatedness analysis. Rather, the District Court simply concluded that the underpayment-of-wages part of GOH's scheme was related to the untimely-disbursement-of-retirement-contributions part of the scheme. See, e.g., Twin City II, 2023 WL 8791175, at *3. That conclusion hardly suggests that the Wage-and-Hour-Violation exclusion would foreclose coverage on every ERISA or similar claim. Furthermore, contrary to Appellants' assertion, the District Court's interpretation of the Policy does

22

not render the FLC's coverage of ERISA claims and similar claims illusory.[12]

Appellants also argue that the dismissal of its counterclaims and the grant of judgment on the pleadings in favor of Twin City were improper because "there are factual issues that need to be resolved before a final coverage determination can be made." Appellants' Opening Br. 38. More specifically, Appellants assert that there are unresolved

---

[12] Although the scope of the exclusion in this case is undoubtedly broad, see supra pp. 19-20, one can readily think of examples of fiduciary claims that would not fall within it. Consider a scenario where a retirement fund's plan administrator invested the correct amounts on the employees' behalf but allegedly did so in a way that enabled the plan administrator to profit from those investments. Or a scenario where the plan administrator, in investing the correct amounts, allegedly failed to act with reasonable care to diversify the employees' investments. These scenarios, which involve ERISA claims, see Edmonson v. Lincoln Nat'l Life Ins. Co., 725 F.3d 406, 415 (3d Cir. 2013) ("ERISA's duty of loyalty bars a fiduciary from profiting even if no loss to the plan occurs."); Berkelhammer v. ADP TotalSource Grp., Inc., 74 F.4th 115, 117 n.1 (3d Cir. 2023) (noting that, under ERISA, a fiduciary must "act[] with reasonable care to diversify investments"), would not be "based on, aris[e] from, or [be] any way related to" a Wage and Hour Violation (recall that the definition of "Wage and Hour Violation," construed in the insured's favor, does not include a violation of ERISA or a similar law, see supra p. 17).

23

factual issues regarding (1) "the 'relative legal exposure' to GOH from covered and non-covered claims," id. at 39, (2) what relief is being sought in Packer, and (3) differences amongst the various class members (particularly, the fact that some employees were overpaid). But none of these factual issues need be resolved to decide the case before us.[13] First, since *none* of the claims in the King and Packer actions are covered under the Policy (because each claim either involves a Wage and Hour Violation or is in some way related to a Wage and Hour Violation), there is no need to apportion liability between covered and non-covered claims. See Twin City I, 2023 WL 5652011, at *11 ("[T]he relative exposure between the fiduciary liability claims and the wage and hour claims is irrelevant; none of the claims are covered so 100% of the legal exposure is for uncovered claims."). Second, the relief being sought in Packer does not control the coverage analysis; as mentioned earlier, what matters is whether the *factual allegations* undergirding the Packer claims are in some way related to a Wage and Hour Violation. See supra p. 20. And third, as the District Court explained, "[t]hat [GOH's] scheme may have impacted certain individuals differently, or perhaps

---

[13] "[T]o the extent there are undetermined facts that might impact on coverage, the insurer has a duty to defend until the 'claim is narrowed to one patently outside the policy coverage,' for example through discovery." Erie Ins. Exch., 228 A.3d at 265 (quoting Mace v. Atl. Refin. Mktg. Corp., 785 A.2d 491, 500 (Pa. 2001) (Saylor, J., dissenting)). But that duty to defend was not triggered in this case, for the factual issues cited by Appellants do not affect the coverage determination.

24

even benefited certain individuals, is not relevant to the [coverage] inquiry." Twin City II, 2023 WL 8791175, at *3.

None of the other arguments presented in Appellants' briefing is persuasive. For example, although Appellants correctly note that an insurer has a duty to defend a claim that is even *potentially* covered by the insurance policy in question, see Erie Ins. Exch., 228 A.3d at 265 (explaining that an insurer's duty to defend "is triggered 'if the factual allegations of the complaint on its face encompass an injury that is actually or potentially within the scope of the policy'" (emphasis omitted) (quoting Babcock & Wilcox Co. v. Am. Nuclear Insurers, 131 A.3d 445, 456 (Pa. 2015))), none of the Disputed Claims is potentially covered. Indeed, as indicated above, these claims are clearly excluded from coverage because they are at least in some way related to a Wage and Hour Violation. Nor is there merit to Appellants' argument that "the District Court essentially ignored the law on construing ambiguities against the drafter by giving Twin City the benefit of its ambiguous language." Appellants' Opening Br. 46. As discussed earlier, the District Court construed the definition of "Wage and Hour Violation" in Appellants' favor (by interpreting that provision so that it did not include alleged violations of ERISA or any similar law), and we see no other ambiguity in the relevant provisions of the Policy.

## IV.    Conclusion

For the foregoing reasons, we will affirm the judgment of the District Court.

25