NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 23-1891 and 23-2279
_____

ESSENTIAL UTILITIES, INC.,
formerly known as AQUA AMERICA, INC.
AND AQUA ILLINOIS, INC.; AQUA ILLINOIS, INC.

v.

SWISS RE CORPORATE SOLUTIONS ELITE INSURANCE CORPORATION,
formerly known as NORTH AMERICAN ELITE INSURANCE COMPANY;
SR CORPORATE SOLUTIONS AMERICA HOLDING CORPORATION;
SWISS REINSURANCE COMPANY LTD, SUCCESSOR BY MERGER TO
SWISS RE CORPORATE SOLUTIONS LTD

Swiss Re Corporate Solutions Elite Insurance Corporation,
                                                              Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-22-cv-01559)
District Judge: Honorable Eduardo C. Robreno

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on October 1, 2024

Before: SHWARTZ, MATEY, and SCIRICA, *Circuit Judges.*

(Filed: January 6, 2025)

**SCIRICA**, *Circuit Judge*

Essential Utilities seeks excess coverage from its commercial umbrella liability insurer to defend against lawsuits arising out of alleged water lead contamination. Both parties moved for judgment on the pleadings. The District Court held for Essential Utilities. We will affirm.

I.

Plaintiff Essential Utilities, formerly known as Aqua America, is a water utility that triggered regulatory scrutiny and putative class actions for allegedly distributing lead-contaminated water to residents of the Village of University Park, Illinois. Essential Utilities had a five-million-dollar primary liability insurance policy from Chubb Insurance. That policy was exhausted—Chubb spent all five million dollars on indemnity payments and defense costs related to the class action lawsuits. Essential Utilities also purchased excess general liability insurance coverage from defendant Swiss Re Corporate Solutions Elite Insurance ("SRCS Elite") under two umbrella policies which are, in relevant part, identical.

Those policies merit some detail. The SRCS Elite policies' Pollution Exclusion provides that coverage does not extend to the insured's damages, expenses, and lawsuits

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

related to "the effects of pollutants." App. 443, 514. Under an exception to the Pollution Exclusion, however, an insured who obtained the proper "retained limits" coverage for the pollution liability risks is entitled to excess coverage for bodily injury and property damage. App. 385, 443, 450, 514. Provided that Essential Utilities exhausted its retained limits coverage, then, SRCS Elite's duty to defend would be triggered. *See* App. 387, 452 ("We will have the right and duty to defend the 'insured' . . . when . . . the applicable limits of 'scheduled underlying insurance' have been exhausted by payment of 'loss' to which this policy applies and the total applicable limits of 'other insurance' have been exhausted . . . .").

Crucially, the policy defines "retained limits" as including "[t]he total applicable limits of 'scheduled underlying insurance' and any applicable limit of 'other insurance' providing coverage to the 'insured.'" App. 404, 469. If the insured does not have retained limits in the form of "scheduled underlying insurance" or "other insurance," then under a second exception, the Named Peril Exception, the insured can obtain more limited coverage—but only after paying a ten-million-dollar Self-Insured Retention.[1] That coverage extends to "damages" in excess of the retention and any retained limits.

Contending it satisfied the Retained Limits Exception, Essential Utilities sought excess coverage. SRCS Elite disagreed, arguing its duty to defend would start only at the

---

[1] "Self-Insured Retention" is not a defined term in the policies. But, in general, self-insured retentions are "in effect, large deductibles. . . . A self-insured retention (like a deductible) represents the amount of the loss that the insured is responsible for before the coverage is triggered." 3 Allan D. Windt, *Insurance Claims and Disputes* § 11:31 (6th ed. 2013).

3

fifteen-million-dollar level—*i.e.*, after Essential Utilities exhausted both its five-million-dollar Chubb policy and the ten-million-dollar Self-Insured Retention. In its complaint, Essential Utilities raised breach of contract, breach of good faith and fair dealing, statutory bad faith, and tortious interference claims. It also sought a declaratory judgment that SRCS Elite's duty to defend was triggered.

Before the District Court, the parties initially agreed the first prong of the "retained limits" definition—"scheduled underlying insurance"—does not apply. *See Essential Utils., Inc. v. Swiss re Grp.*, 654 F. Supp. 3d 476, 481 (E.D. Pa. 2023). Accordingly, the District Court considered whether Essential Utilities' primary Chubb policy sufficed as "other insurance" under the policies. Holding that it did, the District Court then encountered an ambiguity in the Retained Limits Exception. Specifically, the exception includes a "follow form" provision, which provides that the excess liability insurer will provide coverage that follows the terms of the scheduled underlying insurance.[2] But because the "scheduled underlying insurance" prong of the retained limits definition does not apply here, SRCS Elite seemingly has no underlying insurance policy for which it could "follow form."

The District Court accordingly resolved this ambiguity in the Retained Limits Exception in favor of coverage by studying the plain text of the Pollution Exclusion. When the applicable limits of "other insurance" are exhausted, the court held, SRCS Elite

---

[2] That provision here reads as follows: "[C]overage provided under this Policy will follow the terms, definitions, conditions, exclusions and limitations of the first underlying insurance as described in the 'scheduled underlying insurance.'" App. 443.

must follow form with respect to that *other insurance* policy's provisions. The court noted a previous, superseded version of the Pollution Exclusion only had the Retained Limits Exception triggered by the existence of "scheduled underlying insurance," not "other insurance." Concluding that the superseding Pollution Exclusion at issue here reflected the parties' intent to expand the Retained Limits Exception's applicability, the court construed the Pollution Exclusion in Essential Utilities' favor and held the follow form provision also applies to "other insurance."

Because Essential Utilities had obtained "other insurance" in the form of the Chubb policy, the District Court denied SRCS Elite's motion for judgment on the pleadings on the breach of contract and declaratory relief claims. And because the "total applicable limits" of the Chubb policy were exhausted, the court granted Essential Utilities partial judgment on the pleadings on its request for declaratory relief with respect to SRCS Elite's duty to defend. The District Court subsequently denied SRCS Elite's motion for reconsideration. SRCS Elite timely appealed.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1332(a), since all parties are diverse from each other.[3] We have appellate jurisdiction under 28 U.S.C. § 1291.[4]

---

[3] Essential Utilities is incorporated and has its principal place of business in Pennsylvania. The other plaintiff, Aqua Illinois, is a wholly owned subsidiary of Essential Utilities and is incorporated and has its principal place of business in Illinois. SRCS Elite, the sole appellant before us, is organized under the laws of New Hampshire and has its principal place of business in Missouri.

[4] SRCS Elite filed two notices of appeal. First, it filed a motion for entry of partial final judgment under Federal Rule of Civil Procedure 54(b) or, alternatively, for

5

We review orders granting or denying judgment on the pleadings de novo. *See Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 139-40 (3d Cir. 2023)*; Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017). We analyze a motion for judgment on the pleadings under the same standard as for a Rule 12(b)(6) motion to dismiss. *See Twin City Fire Ins. Co. v. Glenn O. Hawbaker, Inc.*, 118 F.4th 567, 573-74 (3d Cir. 2024) (citing *Vitamin Energy, LLC v. Evanston Ins. Co.*, 22 F.4th 386, 392 n.6 (3d Cir. 2022)). A court should enter judgment on the pleadings if "there are no material issues of fact, and [the movant] is entitled to judgment as a matter of law." *Zimmerman*, 873 F.3d at 417 (internal quotation marks omitted) (quoting *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005)).

Under Pennsylvania law, which we agree with the parties applies, "[t]he interpretation of the scope of coverage of an insurance contract is a question of law properly decided by the court, a question over which this court exercises plenary review." *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 418 F.3d 330, 333 n.5 (3d Cir. 2005) (citation omitted). In determining scope of coverage under Pennsylvania law, we must "read [the policy] as a whole" and "construe[ it] in accordance with the plain meaning of [its] terms." *Twin City Fire Ins. Co.*, 118 F.4th at 574 (citation omitted). And when we encounter an ambiguity in an insurance policy, we construe the ambiguous provision "in

---

certification under 28 U.S.C. § 1292(b). It filed a notice of appeal on the same day. The District Court then granted the Rule 54(b) motion for entry of partial final judgment with respect to the question of SRCS Elite's duty to defend and stayed the case. SRCS Elite thereafter filed its second notice of appeal. We consolidated both appeals.

favor of the insured." *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 674 (3d Cir. 2016) (internal quotation marks omitted) (quoting *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Com. Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006)).

## III.

The District Court faced an ambiguous provision in SRCS Elite's Retained Limits Exception. The Pollution Exclusion clearly carves out from coverage any claims involving pollution,[5] unless the insured "retained limits" in the form of "scheduled underlying insurance" or "other insurance" that "provid[es] coverage to the 'insured.'" App. 404, 443. If the insured obtained retained limits in either form, then the Retained Limits Exception mandates "follow form" coverage—that is, SRCS Elite would have to follow the provisions of the underlying policy that satisfies the retained limits definition. But—and here is the ambiguity—the Retained Limits Exception provides that its follow form coverage will follow the terms of the "first underlying insurance as described in *the 'scheduled underlying insurance.*'" App. 443 (emphasis added).

---

[5] But for an applicable exception, the Pollution Exclusion would clearly preclude coverage, since Essential Utilities seeks to trigger SRCS Elite's duty to defend it in class action lawsuits involving "[d]amages arising out of the . . . discharge, dispersal, seepage, migration, release or escape of pollutants"—contamination of the water in the Village of University Park, Illinois. App. 443. Accordingly, we reject Essential Utilities' argument that the provision is ambiguous as to its coverage of "the particular movement of lead" and "nonremediation costs." Ans. Br. 11-12. "[C]onstrued in accordance with the plain meaning of [its] terms," *Am. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 320 (3d Cir. 2011), the Pollution Exclusion would bar coverage for the type of lead contamination at issue here, unless an exception to the exclusion applies.

In other words, even though the Retained Limits Exception is triggered by the retained limits of "other insurance," the exception specifies follow form coverage only with respect to "scheduled underlying insurance." The exception appears silent on any corresponding follow form coverage when the insured retained limits using "other insurance." Here, Essential Utilities purchased primary coverage from Chubb, whose five-million-dollar cap it then exhausted. That policy is clearly "other insurance," as the District Court correctly concluded, because the policy's definition of "other insurance" requires only that it "cover *some* of the same *damages*" as the excess policy. App. 8.

In sum, Essential Utilities contends SRCS Elite owes excess coverage, which must follow the "terms, definitions, conditions, exclusions and limitations of the" Chubb policy. App. 443; *see also* Ans. Br. 43-44 ("[T]he district court . . . determined that the [Retained Limits] Exception was *unambiguous* as to whether the Exception could be triggered by only 'other insurance' to restore coverage, but *ambiguous* as to what terms control in the event the Exception is triggered only by 'other insurance.'" (emphasis omitted)).

The District Court resolved this ambiguity in favor of the insured by holding that the Chubb policy's terms govern the follow form provision in the Retained Limits Exception. Although the court just once in its detailed memorandum opinion referred to this resolution as "reform[ing]" the contract, *Essential Utils.*, 654 F. Supp. 3d at 483, this holding does not sound in reformation. As the "quintessential equitable remedy," reformation has its roots in the English chancery courts' practice of rectifying the "scrivener's error" by reforming a written contract to better comport with the parties'

8

intended agreement. 1 Corbin on Pennsylvania Contracts § 28.11. Pennsylvania courts have expanded that rationale to include instances where justice requires reformation to protect parties' reliance interests. *See id.* (citing the Restatement (Second) of Contracts § 158(2)). Those rationales do not underpin the District Court's holding here. Rather, the court applied the well-settled rule under Pennsylvania law that ambiguous provisions in insurance contracts must be construed in favor of coverage. *See Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 290 (Pa. 2007) ("[W]hen a provision in the policy is ambiguous, the policy is to be construed in favor of the insured . . . , as the insurer drafts the policy and controls coverage.") (internal quotation marks and citation omitted); *Wilson*, 57 F.4th at 141 ("Ambiguous provisions in an insurance policy must be construed in favor of the insured and against the insurer." (citing *Med. Protective Co. v. Watkins*, 198 F.3d 100, 104 (3d Cir. 1999))).

Construing the Retained Limits Exception "in favor of the insured," *Ramara, Inc.*, 814 F.3d at 674, we agree with the District Court for several reasons. First, the superseded version of the Pollution Exclusion used the words "scheduled underlying insurance" where the superseding version uses "retained limits," suggesting the parties' intent to expand the application of the Retained Limits Exception to the full definition of "retained limits," which includes "other insurance." App. 395, 443. A plain reading of the Retained Limits Exception is that it is intentionally inclusive of both types of retained limits in the *triggering* of the exception. Accordingly, we are obliged to resolve the ambiguity concerning whether the excess coverage follows form, once the exception is triggered, in favor of coverage and in congruence with that plain reading.

9

Second, SRCS Elite's proposed construction of the Retained Limits Exception would have us reach an absurd result—we would have to hold the exception *allows* pollution coverage, but without any terms from an applicable underlying policy to follow.[6] "[B]efore . . . interpret[ing] a provision . . . in a contract in such a way as to lead

---

[6] SRCS Elite repeatedly attempts to revive an argument that it failed to raise before the District Court before partial judgment on the pleadings was entered against it—namely, that its excess coverage should follow the form of a Liberty Mutual policy Essential Utilities retained. SRCS Elite contends the Liberty Mutual policy is on its list of "scheduled underlying" policies, and consequently it is the "first underlying insurance" for purposes of the Retained Limits Exception's follow form provision.

This argument misses the mark for two reasons. First, SRCS Elite initially conceded the "scheduled underlying insurance" prong of its policies' retained limits definition does not apply in this case. *See Essential Utils.*, 654 F. Supp. 3d at 481. When SRCS Elite then changed course and raised that argument for the first time in its motion for reconsideration, the District Court deemed it inappropriate to consider in that posture. Incredibly, SRCS Elite argues in its opening brief that the District Court opined on the Liberty Mutual policy and "correctly interpreted [the term "scheduled underlying insurance"] to mean the Liberty Primary Policy," App. Br. 27. In actuality, the District Court never once mentions the Liberty Mutual policy by name. Instead the pages SRCS Elite cites for its proposition merely state the uncontroversial fact that the SRCS Elite policies list scheduled underlying insurance policies *before* noting that the parties agreed that the scheduled underlying insurance prong of the retained limits definition is inapplicable here. *See Essential Utilities*, 654 F. Supp. 3d at 481.

But more to the point, that argument cannot be squared logically with the argument SRCS Elite made in its motion for judgment on the pleadings. SRCS Elite's initial theory of its case was that because *all* scheduled underlying insurance and *all* other insurance must be exhausted to trigger the Retained Limits Exception, and Essential Utilities *had no scheduled underlying insurance to exhaust*, it could never avail itself of the exception. In its memorandum opinion, the District Court squarely rejected that interpretation of the contract, prompting SRCS Elite to drop that argument in its subsequent motions and in its briefing before this Court. On appeal, SRCS Elite has argued it should have to follow the terms of the Liberty Mutual policy, despite its total lack of pollution risk coverage. The definition makes clear that "retained limits" consist of only the "applicable" limits of scheduled underlying insurance or other insurance.

10

to an absurdity or make the . . . contract ineffective to accomplish its purpose, [we] will endeavor to find an interpretation which will effectuate the reasonable result intended." *Binswanger of Pa., Inc. v. TSG Real Est. LLC*, 217 A.3d 256, 262 (Pa. 2019) (internal quotation marks omitted) (quoting *Pocono Manor Ass'n v. Allen*, 12 A.2d 32, 35 (Pa. 1940)). The intended reasonable result here, based on the structure of the Pollution Exclusion, the Retained Limits Exception, and the policies' definition of retained limits, is to provide pollution coverage where an insured has met its applicable retained limits— whether in the form of scheduled underlying insurance or other insurance. To effectuate that intent here, the Pollution Exclusion must follow form to the Chubb policy.

Third, without extending the follow form provision to the Chubb policy, Essential Utilities would lack pollution coverage from SRCS Elite entirely. Under Pennsylvania law, not only should courts "not interpret contracts in a manner leading to an absurd result," but they also should not "render[] the contract ineffective to accomplish its stated purpose." *Mfrs. & Traders Tr. Co. v. Germansville Feed & Farm Supply, Inc.*, No. 2494

---

App. 404. The only "applicable" retained limit Essential Utilities obtained is the Chubb policy, which covers pollution risks.

Second, given that the Retained Limits Exception's follow form provision points to the "*first* underlying insurance," App. 443 (emphasis added), and there is nothing in the record to suggest the Liberty Mutual policy is "first" among Essential Utilities' primary policies, it would strain reason to hold the Liberty Mutual policy terms as governing the follow form provision. In fact, Essential Utilities retained *three other* forms of scheduled underlying insurance—for automobile liability, employee benefits liability, employers' liability, and general liability. App. 407, 473. SRCS Elite fails to raise in its briefing what specifically sets apart the Liberty Mutual policy for purposes of the follow form provision.

11

EDA 2013, 2014 WL 10986126, at *3 (Pa. Super. Ct. Feb. 7, 2014); *see also Pocono Manor Ass'n*, 12 A.2d at 35.[7] SRCS Elite claims the Named Peril Exception would still allow pollution coverage. But for the reasons discussed above, that exception would only trigger SRCS Elite's duty to pay damages—and only after the insured pays the ten-million-dollar Self-Insured Retention—not defense costs. It is apparent from the plain text of the Pollution Exclusion that the parties intended to extend the duty to defend to insureds who retained the applicable limits and have since exhausted those retained limits. Accordingly, SRCS Elite had a duty to defend once Essential Utilities exhausted the Chubb policy.

Faced with a provision unambiguously extending excess pollution coverage but ambiguous as to which policy's terms govern that coverage, the District Court properly "endeavored to find an interpretation of the pollution endorsement that avoided an ineffective result and chose [Essential Utilities'] interpretation which appeared to be the only reasonable one based on the parties' arguments." App. 24 n.1 (cleaned up) (quoting *Laudig v. Laudig*, 624 A.2d 651, 654 (Pa. Super. Ct. 1993)). To avoid reaching an absurd result incongruent with the plain text of the Pollution Exclusion, we agree with the District Court's conclusions.

IV.

For the foregoing reasons, we will affirm.

---

[7] Because we hold the Retained Limits Exception applies and the Chubb policy governs the follow form provision, we need not reach whether the Named Peril Exception applies and, if it did, what duty to defend it would require SRCS Elite to execute.